May Term,
1852.

SHERRY
v.
SANSBERRY.

SHERRY v. SANSBERRY.

A guardian may invest the money of his ward in real estate, under an order of the proper Court.

If he converts it into real estate, without such an order, he may be liable to answer for any loss that may follow, and the ward will have the option, when he arrives at full age, to accept the real estate, or to refuse it, convey it to his guardian and require the purchase-money and interest. If he accepts the real estate, with a full knowledge of all the facts, and without fraud on the part of the guardian, he will be bound by the acceptance.

So the ward may, on arriving at full age, purchase property from his late guardian; and although such a purchase will be closely scrutinized by a Court of equity, yet, if fairly made, it will stand.

A guardian contracted with his ward, two years before the latter arrived at full age, to sell to him a tract of land, for a sum agreed upon. The ward went into possession, and remained there till he attained to his majority, and, hence, knew the location, quality and value of the land. With this knowledge, and without, so far as appeared, any undue influence on the part of the guardian, he accepted a deed for the land after he became of full age, and subsequently retained the possession and use of it for fifteen months without objection. Held, that the ward could not have the sale set aside and compel the guardian to account for the purchase-money.

A direction or order given to a guardian by a Probate Court, within the sphere of its jurisdiction, cannot be impeached collaterally, except for fraud.

Wednesday,
May 26.

ERROR to the *Delaware* Circuit Court.

PERKINS, J.—This was a bill in chancery filed by *James W. Sansberry* against *John Sherry*.

The plaintiff alleges that he is the son of *James Sansberry*, deceased; that in *September*, 1839, he was an infant, fifteen years of age; that in *May*, 1840, *John Sherry* was appointed, by the *Rush* Probate Court, the guardian of his person and estate, and filed his bond, with *John Kirkpatrick* as surety; that immediately thereafter said *Sherry* received, as such guardian, 400 dollars of money belonging to said plaintiff, and used and wasted it; that the plaintiff became of age in *September*, 1845, and has been unable to get an accounting and settlement from said guardian; that said guardian wrongfully paid to one *Daniel Sherry* 55 dollars and 65 cents of the plaintiff's money; and that, in 1843, when said plaintiff was but nine-

teen years of age, the defendant fraudulently induced him to purchase of said defendant 80 acres of land in *Delaware* county for the price of 300 dollars, at which sum he charged it to the plaintiff and retained money to that amount in payment; that when said plaintiff came of age the defendant made him a deed to said land, then worth much less than 300 dollars; that during plaintiff's minority he made improvements on the land to the value of 10 dollars, and paid certain taxes; that he has applied to the defendant to take back the land and settle with plaintiff by paying him his money, and has tendered a reconveyance of it, which was acknowledged on the 21st of *December*, 1846. The date of the tender does not appear. The bill prays an accounting and payment in money.

May Term, 1852.

SHERRY
v.
SANSBERRY.

The defendant's answer admits the guardianship and bond, but alleges that he has fully settled his accounts; paid over all moneys in his hands; denies all fraud, and avers that the land was purchased for, and sold to, the ward, the plaintiff, at his earnest solicitation; that he was in possession of it two years before he arrived at majority, and received his deed, and that he well knew its value, &c., and that it was worth 300 dollars. As to the sum paid to *Daniel Sherry*, he says it was for the board and clothes of the ward; and he makes an exhibit of the following records of proceedings had in the *Rush* Probate Court, as showing the truth of the case, viz.:

" *Daniel Sherry* v. *John Sherry*, guardian of *James Sansberry*. Be it remembered, that on the first juridical day of the *August* term of the *Rush* Probate Court, begun and held in *Rushville, Rush* county, *Indiana*, on the second *Monday* and eleventh day of *August*, 1845, before the Hon. *Alexander Walker*, probate judge of *Rush* county, now comes *Daniel Sherry*, and files the following claim, to-wit:

" *John Sherry*, guardian of *James Sansberry*, jun., to *Daniel Sherry*, Dr.

To boarding, clothing, and taking care of said minor heir

from *September*, 1830, to *November*, 1839, at 30 dollars per year,···························· $270 00

To schooling, boarding, &c., from 1839 to 1845,    50 00

Total, ······························ $320 00

" *August* 11th, 1845.   *Daniel Sherry.*

" Thereupon the Court, after hearing the evidence, order said guardian to pay to the said *Daniel Sherry* the sum of 150 dollars for boarding and clothing said ward."

" *John Sherry*, guardian of *James Sansberry*.   Final settlement.   Be it remembered, that on the second juridical day of the *Rush* Probate Court, begun and held in the court-house in *Rushville*, *Rush* county, *Indiana*, on the second *Monday* and eleventh day of *November*, 1845, before the Hon. *Alexander Walker*, probate judge of *Rush* county, now comes said guardian and files his exhibit on final settlement, to-wit:   Exhibit of *John Sherry*, guardian of *James Sansberry*, in final settlement.   To amount of money received altogether,··············· $364 25

Interest, ······························· 34 65

Total, ······························· $398 90

By land purchased as per acquittance of *James
Sansberry*, ·························· 300 00

*Daniel Sherry*, as per receipt, ·············· 55 65

*R. Thompson*, ························· 1 12

*J. W. Alley*, ·························· 1 00

Said guardian claims for his services, and money expended by him,··················· 36 75

Taxes paid for the years 1844 and 1845, '44 paid and '45 charged to the said guardian,·· 4 38

$398 90

*J. L. Robinson*, ······················ 1 25

*Tingley* and *Hubbard*, ··················· 1 00"

Then follows an affidavit of the correctness of two of the items of the account for which the guardian had lost the receipts, and which it is unnecessary to copy into this

May Term,
1852.

SHERRY
v.
SANSBERRY.

opinion.   The record proceeds:  " And it is considered that he has properly performed his duties and trusts in the premises, and rightfully settled with his ward, and that he be hence discharged without day."

" State of *Indiana, Rush* county, ss.   I, *John L. Robinson*, clerk of the *Rush* Circuit Court in and for said county of *Rush*, in the state of *Indiana*, hereby certify that the above and foregoing are true and correct and complete copies of the proceedings in the above entitled causes; that the above exhibit of the said *John Sherry*, said guardian, and the proceedings of the Court thereon, are true and correct copies of the original exhibit and proceedings; and that the above proceedings wherein *Daniel Sherry* is plaintiff and *John Sherry*, guardian, &c., defendant, are also true and correct copies of the original proceedings.

" Given under my hand and the seal of said Court at *Rushville*, this 9th day of *October*, 1847.   *John L. Robinson*, clerk."

The clerk of the Circuit Court is, by law, *ex officio*, clerk of the Probate Court.

The usual replication was filed to the answer.   No depositions were taken.   The cause was set down for hearing, and the Court decreed that the guardian should take back the land and account to the ward in money.   As to the payment to *Daniel Sherry*, a bill of exceptions states that on the accounting had in the case pursuant to said decree to account, " the following order of the *Rush* Probate Court being in evidence, being the order above set out in favor of *Daniel Sherry* against said defendant for 150 dollars, the plaintiff offered to introduce evidence for the purpose of going behind said order and contesting the cause of action and consideration on which it was founded; the defendant objected, the Court overruled the objection, and suffered the evidence to be introduced," &c.

Two questions arise in this case.

1. Did the Court err in requiring the guardian to take back the land sold to the ward?

May Term, 1852.

Sherry
v.
Sansberry.

2. Did the Court err in permitting the merits of the order of the *Rush* Probate Court in reference to the claim of *Daniel Sherry* to be re-investigated?

It is the duty of a guardian to invest, in the most judicious manner, according to his judgment, the money of his ward. It has not formerly been generally considered advisable to convert it into real estate, but still the guardian possesses the power so to convert it. He may and should do this, if at all, under an order of the proper Court; R. S., p. *610*, s. *96*; and if he do, the order will protect him from the consequences of the act. If he convert it without such order, he may be liable to answer for any loss that may accrue, and the ward will have the option, on coming of age, of refusing the realty, conveying it to his guardian, and requiring the purchase-money and interest, or of accepting the realty. 2 Kent, 6 ed., 230. If he do then accept the real estate, and thus affirm the act of his guardian, it being done with full knowledge of all the facts, and without fraud on the part of the guardian, the ward will be bound by such acceptance. So the ward may, on arriving at majority, purchase property from his late guardian. Such a purchase will be closely scrutinized by a Court of equity, but if fairly made, it will stand. See *Kirby* v. *Taylor*, 6 John. Ch. R. 242.

Regarding the transaction in question, either as an investment, by the guardian, of the ward's money in real estate, or as a purchase by the ward from his guardian after arriving at majority, or as partaking of the character of both these acts, should it be affirmed or annulled? It appears that the guardian contracted the land in controversy, at a price fixed, to his ward, two years before he became of age; that the ward went into possession, (for he says he made an improvement on the land while he was a minor); that hence, for all that time, he knew the location, quality, and price of the land; that with this knowledge, and without, so far as appears, any undue influence on the part of his guardian, he accepted, after arriving at majority, a deed for said land, and afterwards retained

the possession and use of it for fifteen months, without objection.

We think, from these facts, the conclusion is, that the ward accepted the land after becoming of age, on his own unbiased judgment; and having done so, we think he is bound by that acceptance. If there were any circumstances in the case making it fraudulent, he should have shown them.

In coming to this conclusion, we have not taken into consideration the fact that the Probate Court of *Rush* county appears, on the final settlement of the guardian, to have approved of the investment of the money in the land in question. We intend no opinion as to the effect of that sanction of the transaction. See *Field* v. *Schieffelin*, 7 John. Ch. R. 150.

We think the Court also erred in re-examining, on its merits, the subject matter of the order of the *Rush* Probate Court for the payment of money to *Daniel Sherry*.

It is the office and duty of the Probate Courts of our state to exercise a care and guardianship over the estates of minors and others under disability, when legally placed under their jurisdiction, and to direct those who may be in the administration of such estates. They possess the powers to make all orders necessary to the proper discharge of such duty. R. S., *supra*. And, on principle, it seems to us, those orders should not be impeached collaterally, except for fraud. If they can be, they will certainly afford no protection to those whose duty it is to act under them, and the conferring of the power upon the Courts to make them was an idle act. In regard to executors and administrators, our statute provides, R. S., p. 552, s. 366: "The order or decree of the Probate Court, in making distribution of the estate of the deceased, or any order or allowance of the Probate Court of any debt, claim, or demand against the estate of the deceased, and every allowance and settlement by the Probate Court of any account rendered by such executor or administrator in said Court, if such order, allowance, or settlement was

obtained or suffered by such executor or administrator in good faith, without fraud, collusion, or negligence, shall be conclusive evidence in his favor, and a full justification for him in respect to any payment made in pursuance of any such order or allowance, and in respect to any matters settled, adjusted, or disposed of by any such order, allowance, or settlement."

As to guardians, section 96, p. 610, of the same statutes confers upon them power to, " at any time, give such directions, and make such orders as the case may require, for managing, investing, and disposing of, the estate and effects in the hands of the guardian," but it does not declare the effect such orders shall have; but we think it results from general principles of law, that, when made within the jurisdiction of the Court, they are conclusive where there is no fraud.

To prevent misapprehension, we should remark that the rule here laid down is regarded as governing those orders only made between administrators and guardians and third persons, and not as applicable to *ex parte* settlements of their own accounts with estates in Court. These, as has been often decided, are but *prima facie* correct.

The Court, in this case, therefore, should first have limited the evidence to the proof of fraud in the order for said payment to *Sherry*. If set aside for that cause, a re-examination on the merits would follow.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*W. March*, for the plaintiff.

*T. J. Sample* and *D. Kilgore*, for the defendant.