CASE 52—PETITION EQUITY—June 26.

# Durrett's Guardian v. Commonwealth.

APPEAL FROM KENTON CHANCERY COURT.

1. In order to fix a guardian's liability for loss resulting from an unauthorized investment of the ward's funds, it is not necessary that the ward should sue to surcharge a settlement made by the guardian with the county court, in which he has been credited by the amount of the investment. The county court having no right to try the question, whether the guardian has rendered himself and his sureties liable by investing the ward's funds negligently, or in violation of law, there is nothing in the settlement to surcharge or falsify.

2. Power of Guardian to Change Investment.—A guardian has the power, under particular circumstances, to change the nature of the ward's estate where it is manifestly for the ward's benefit; and while he may go into a court of equity, and by means of a suit get the direction of the chancellor, and thus protect himself from liability, he is not bound, under all circumstances, to do so. The interest of the ward may forbid delay.

3. A guardian, in investing the ward's means, is not confined to the securities named in our statute, but it must be a secured investment of a character authorized by the general law, and such as has been approved by courts of chancery.

   Where the circumstances authorized the belief that bank stock which had come to the ward by descent was in peril, the guardian had the right to exchange it for stock in another bank which was, beyond question, apparently solvent; and having acted in good faith, and as a man of ordinary prudence would have acted in his own affairs, he is not liable for loss resulting from the depreciation of the stock in value, which could not, by the utmost diligence, have been foreseen or apprehended.

4. Removal of Ward's Property from the State.—The sale by a guardian of stock of the ward in a foreign bank, and the reinvestment of the proceeds in stock of another foreign bank, was not a removal of the property of the ward out of this Commonwealth within the meaning of section 18 of article 2, chapter 48, General Statutes, even conceding that the word "property," as used in the statute, embraces intangible estate.

5. Direction of Court as to Investments.—A judgment of court authorizing the guardian to invest the ward's means in real estate did not require him to invest all her means in real estate; and did not

Durrett's Guardian v. Commonwealth.

take from him the power of investment which he had by the general law independent of the direction of the court.

W. K. BENTON FOR APPELLANT.

1. Statute law of Kentucky upon the subject of investments by guardians: Act of March 1, 1797, Digest of Statutes, vol. 1, p. 643; act of January 15, 1831, 1 Statute Law, 771; Revised Statutes, chap. 43, art. 2, sec. 7; Myers' Supp., p. 254; General Statutes, chap. 48, art. 2, secs. 18, 19; act of March 6, 1884, General Statutes, p. 707.

2. There has been no removal of the ward's property from the State. Shares of stock are personal property, and follow the abode of the owner. (City of Louisville v. Sherley, &c., 80 Ky., 71; Cromie v. Bull, 81 Ky., 658.)

There is no legal difference between an investment in the bonds of a foreign State and in the bonds of a foreign private corporation. An investment in either is not a violation of the law. (Thompson & Thompson v. Pettibone, &c., 79 Ky , 319.)

3. The provision of the General Statutes that courts of equity may direct the investment in real estate or bonds was not intended to operate as a restriction upon the guardian. (Worrell's Appeal, 9 Pa. St., 511.)

4. A guardian is a trustee, and all that a court of equity requires of him is ordinary prudence and skill. (Jones' Appeal, 8 Watts & Serg., 143; s. c., 42 Am. Dec., 282; Boaz's Adm'r v. Milliken, 83 Ky., 638; Cross v. Petree, 7 B. M.; Harrison v. Berry, 82 Ky., 141; Merriwether v. Merriwether, &c., 3 Ky. Law Rep., 326; Barney v. Parsons, 54 Vt., 623; s. c., 41 Am. Rep., 858; Kimball v. Reding, 31 N. H., 352; s. c., 14 Am. Dec., 336.)

If the securities that come to the guardian's hands are such that a reasonably prudent man would not hold, the guardian should sell them. (1 Perry on Trusts, sec. 465; Powell v. Evans, 5 Ves., 839; Wills' Appeal, 22 Pa St., 325; Lacey v. Davis, 4 Redf., 402; Ward v. Kitchen, 30 N. J. Eq., 31; Lacey v. Stamper, 27 Gratt., 42.)

A trustee having power to manage, invest and pay over may invest and reinvest. (Luxon, &c., v. Wilgus, &c , 7 Bush, 205.)

Investments of stocks or bonds of private corporations stand on the same footing as loans on personal security. (Trafford v. Boehm, 3 Atk., 400; Hynes v. Redington, 1 Jones & La. T., 589; s. c., 7 Ired. Eq., 405; Ackerman v. Emott, 4 Barb., 626; King v. Talbot, 40 N. Y., 476; Ward v. Kitchen, 30 N. J. Eq., 31; Worrell's Appeal, 9 Pa. St., 508.)

Where the English rule as to personal security does not obtain, an investment in the stock of a private corporation stands on the same ground as loans on private security generally, and if made with due prudence and caution the trustee will be protected. (Harvard College v. Amory, 9 Pick., 446; Lowell v. Minot, 20 Pick., 116; Brown

Durrett's Guardian v. Commonwealth.

v. French, 125 Mass., 410; s. c., 28 Am. Rep., 254; Boggs v. Adger, 4 Rich. Eq., 408; Smyth v. Burns, 25 Miss., 422.)

In this State the English rule does not prevail, and the guardian may loan on personal security. (Higgins v. McClure, 7 Bush, 379; Jennings' Ex'r v. Davis, &c., 5 Dana, 132; Clay v. Clay, 3 Met., 553.)

Loans by guardians upon the security of stock, which subsequently depreciated and caused a loss, were held to be justifiable in Lowell v. Minot, 20 Pick., 116; Re Worrell's Est., 14 Phila., 811; Green v. Rountree, 88 N. C., 64; Robertson v. Wall, 85 N. C., 283; Haddock v. Planters' Bank, 66 Ga., 496; Walthall v. Walthall, 42 Ala., 450; Hoffman v. Stoudemire, 42 Ala., 593; Elston v. Wiley, 42 Ala., 640; Covington v. Leake, 65 N. C., 594; Love v. Logan, 69 N. C., 70; Coffin v. Bramlett, 42 Miss., 194.

The case of Citizens' National Bank v. Jefferson, 11 Ky. Law Rep., 175, is absolutely conclusive of the questions involved in this appeal.

H. P. WHITAKER FOR APPELLEE.

1. By reason of the provisions of our statutes pointing out the duties of guardians as to the investment of the ward's funds, guardians are held to a stricter accountability than simple trustees. The fact that they have acted with ordinary prudence and skill is not sufficient to exonerate them. They must secure the loans made by them of the ward's money. (Gen. Stats., chap. 48, art. 2, secs. 18, 19, and amendment of March 6, 1884, p. 707; Higgins v. McClure, 7 Bush, 379; Elbert v. Jacoby, 8 Bush, 542; Clay v. Clay, 3 Met., 548; Hughes v. Smith, 2 Dana, 252.)

Bank stock is not considered a secured investment. (Smith v. Smith, 7 J. J. M., 238.)

2. The investment of the ward's funds in the stock of a foreign bank is a removal of the ward's property from the State, and is such a violation of the statute as renders the guardian and his sureties liable for any loss that may result therefrom.

3. To entitle the plaintiff to redress, it was not necessary that she should surcharge the guardian's settlement. (Clay v. Clay, 3 Met., 548; Hemphill, &c., v. Lewis, 7 Bush, 214.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

This is an action by Maria Louise Powell, an infant, by her next friend upon the bond of her guardian, M. M. Durrett, who became such fiduciary in November, 1882. Its purpose was originally three-fold.

First, to charge him with the cost of what finally

proved to be a bad investment made by him of the ward's funds, upon the ground that it was not only in direct violation of our statute, but made without that care which the general law requires of a guardian.

Second, to compel a conveyance to the ward of certain real estate in which the guardian had invested her means, taking the title to himself as her guardian.

Third, for a settlement of his accounts.

The suit was dismissed by the appellee as to the last ground of action. As to the question of liability for the investment, it was fully prepared by the parties for a hearing upon the merits. The parties pleaded to an issue as to it, and took all the testimony they desired, and by consent submitted the cause for a final judgment.

The lower court ordered a conveyance to the ward of the lands purchased by her guardian, but dismissed the action without prejudice so far as it sought relief on account of the investment. This was done upon the ground that the guardian, having made several settlements in the county court, in one of which he was credited by the investment, his liability for it could only be tested in an action to surcharge his accounts. Whether he was so liable was the only issue in the action. Both sides have objected to the ruling below upon this point, the appellee by there moving to set the judgment aside, while the appellant has appealed from it. Both have fully argued the question of the guardian's liability for the investment in this court, and both desire its determination. Evidently the lower court was in error in refusing to consider the question in this action. The county court

had no power to determine whether the investment had been properly made. It had no right to try the question whether the guardian had rendered himself and his sureties liable by investing the ward's funds negligently or in violation of law. The settlement showed merely that the investment had been made, and credited the guardian by the amount of it.

There was nothing in the settlement to surcharge or falsify. It was true that the investment had been made, and the county court had no jurisdiction to determine any liability arising from it. Therefore, it was not necessary, as a condition precedent to the bringing of this action, to sue to surcharge it. The estate which came to the hands of the guardian was a large one. It amounted to considerably over a hundred thousand dollars. The appellant assumed the trust at the instance of the mother and grandfather of his ward, her father being dead. The estate descended to her from her paternal grandfather. It consisted largely of stocks in corporations.

In 1883 the guardian, after consultation with relatives and friends of his ward, obtained leave from the Kenton Chancery Court to invest her means in real estate in the city of Covington, Kentucky. It was ordered by the court, upon condition that the investments were to be approved by two certain persons, one of whom was the ward's grandfather. In this way nearly a hundred thousand dollars was invested. Among other property so purchased was some vacant land, upon which it was deemed advisable to erect some houses, but not immediately, owing to circumstances which need not be detailed. Such appears

to have been the design in the near future. It was, therefore, considered advisable that the guardian should retain some means of the ward in his hands. This conclusion was reached after consultation between the guardian, the ward's grandfather, and other persons of experience and judgment.

Among the estate which had come to his hands, and which had belonged to his ward's grandfather, was some stock in the Third National Bank of Cincinnati, Ohio, and the National Branch Bank of Madison, Indiana. The stock in both banks had declined in value. It is true that of the first bank had regained its former value to a considerable extent, but in 1886 it was again declining, or at least there were indications that it would do so. The dividends in the Indiana bank had fallen from twelve to six per cent. *per* annum. There was ground for appre·hension of loss upon the stock of both banks. It could then be sold for considerable more *per* share than stock could be purchased in the Metropolitan National Bank of Cincinnati, Ohio, which was then considered an entirely sound institution financially, and the stock of which was paying the same dividend as the two banks in which the ward held stock. But four governmental securities were then on the market, and they were held at a high premium, and yielded but little interest.

After full examination and inquiry into the condition of the Metropolitan Bank, and after consultation with the ward's grandfather, who, it will be recollected, was one of the persons selected by the court to approve the investments in real estate, and

other persons of financial knowledge and experience, it was decided best to sell the stock then held by the ward, and invest the proceeds in Metropolitan Bank stock, which there was then good reason to suppose could be readily sold whenever it became desirable to improve the real estate. It was accordingly done in the fall of 1886 and early in 1887. The stocks sold had a downward tendency, while that obtained was steadily advancing in value. The Metropolitan Bank failed in February, 1888, and probably not over fifty *per centum* of the par value of its stock will be realized by the owners.

This is the investment with which it is sought to charge the guardian. It is manifest he acted throughout in good faith, and with that diligence and care which an ordinarily prudent man would exercise in the conduct of his own affairs. In support of this fact the evidence shows that notwithstanding the loss upon the bank stock, which will probably be from ten to fifteen thousand dollars, the estate now amounts to considerably more than it did when it came to his hands. No one could have foreseen the loss, and yet if the guardian, although guilty of no *mala fides*, and not open to the charge of neglect even, has violated the law, it, owing to its watchfulness of the interests of helpless infants, will hold him responsible. Mere good faith, while requisite and commendable, is not all that is required of such a fiduciary. He must be competent also. While it is his duty to make the ward's estate as productive as a prudent use will admit, yet he must do so in conformity to law. He must possess such legal knowledge as is needful to the proper execution of the trust.

Anciently, guardians were held responsible for the sufficiency of all *personal* security, which they might venture to take for the estate of their wards. They were not liable if they loaned the trust fund upon *real estate or governmental* security. The severity of this rule has been somewhat relaxed by modern decisions, but it is not necessary to here determine to what extent. Courts have been slow, however, to depart from its strictness. It was accordingly held in Smith, &c., v. Smith, 7 J. J. M., 238, where a guardian invested the money of his ward in bank stock, that he was liable for its depreciation; and undoubtedly, if he were to loan the trust estate to an individual without taking security, he would be liable in the event of its loss, although the borrower might, at the time of the loan, be a man of means.

Our statute has provided that our courts of equity *may*, upon the application by petition of the guardian or ward, cause the estate to be invested, under its direction, in real estate, or in safe interest-bearing bonds of the United States, State of Kentucky, or some county or town of this Commonwealth, if it be made apparent that such an investment will be beneficial to the ward. (General Statutes, page 707.) This statute is not exclusive of all other investment, however. It is the duty of the guardian to make the estate productive, and he may, therefore, in a prudent manner, loan out the money of the ward, taking solvent personal security. In such a case he will not be held liable if a loss results without neglect upon his part in preventing it.

Independent of the statute *supra*, the guardian had

the power, under particular circumstances, to change the nature of the estate where it was manifestly for the infant's benefit. If a court would have done it, then it will support the conduct of the guardian in doing so. In saying this, however, we do not mean that he may do so regardless of the character of the investment.

It is urged in this case that the guardian removed the ward's property out of the State, and that this is forbidden by our law. Our statute does provide that a resident guardian shall not remove any of the *property* of the ward out of this Commonwealth without the permission of a court of chancery. (General Statutes, page 707.) If the term "*property*," as used in the statute, embraces intangible estate, yet in this instance we do not think there was a removal within the meaning of the law. It is true that, generally speaking, the legal *situs* of choses in action is where the owner resides; but the estate in question was already represented by stock in foreign banks, and the guardian merely sold it, and at once invested it in other stock in a foreign bank. If the legal *situs* of that sold was in Kentucky, why is that not true of the new stock?

Neither is it true that the appellant took steps in making the investment in violation of the judgment authorizing him to invest the means of the ward. It did not require him, by its terms, to invest all the estate in real estate. The entire control of it as to investment was not, therefore, transferred by the suit to the chancellor. It did not take away from the guardian the power of investment,

which he had by the general law independent of the direction of the court. It may often be vital to the interest of the ward that the guardian should have such power, and be able to act at once without wait-ing for the direction of a court. The estate may be in peril, and an exchange may save it. Under such a state of case common sense, as well as a proper policy, unite in saying that he should be protected when he acts in good faith, and as a man of ordi-nary prudence would in his own affairs. While he may go into a court of equity, and by means of a suit get the direction of the chancellor, and thus protect himself from liability, yet he is not bound, under all circumstances, to do so. Time may not admit of it. The interest of the ward may forbid delay, and to require him always to do so would often endanger the ward's estate. The fact, therefore, that the stat-ute gives him the privilege of doing so should not lead to his being held to a stricter accountability than would otherwise be the case. In fact, counsel for the appellee seem to concede that the guardian may change the security without an order of court, and that investment by him of the ward's means is not confined to the securities named in our statute, but contend, and properly, we think, that it must be a *secured* investment of a character authorized by the general law, and such as has been sanctioned by courts of chancery.

In this instance it must be borne in mind, however, that the guardian had not originally, with the means of his ward, purchased the bank stock. It had come to her by descent. It was, as appeared to the guard-

ian, as a reasonable man, in peril. The circumstances authorized such belief. Acting honestly, and as he would no doubt have done for himself, he, in effect, exchanged it for stock in another bank, which was apparently solvent beyond question. In doing so he made personal examination, and acted upon the advice also of his ward's near kinsmen, and of others. in whose judgment and financial opinions he had a right to place confidence. It was, under the circumstances, such a change as a court would have sanctioned. The same kind of security was obtained, and under such circumstances the guardian should not be held liable for a loss which could not, by any diligence whatever, have been foreseen, or even apprehended, in the slightest degree.

The judgment, so far as it dismissed the action without prejudice as to the claim on account of the bank stock investment, is reversed, and cause remanded, with directions to do so absolutely.