CHARLES P. MATTOCKS, Appellant,

*vs.*

AUGUSTUS F. MOULTON, Administrator.

Cumberland.    Announced March 19, 1892.

Opinion August 5, 1892.

*Trustee.  Investment.  Probate.  R. S., 68, § 11; c. 77, § 6, par. VII; Stat. 1891, c. 49.*

In the investment of trust funds the trustee must exercise sound discretion as well as good faith and honest judgment.

It is not within the limits of sound discretion to invest trust funds in the notes or shares of a business corporation which has no surplus, nor working capital, but is doing business wholly upon credit; nor in second mortgages.

A trustee, under a will, with power to take, hold, manage and invest all the estate in such manner as he shall deem for the best interest of all concerned, is not thereby relieved from the observance of the well known principles applicable to the investment of trust funds.

The propriety of investments by an executor, who is also trustee, is not concluded by his settlement of an account in probate, and transfer of the listed investment to him in his subsequent account as trustee.

ON REPORT.

The case is stated in the opinion.

*Strout, Gage and Strout*, for appellant.

So far as the report shows, the investment in stock of the corporation was a sound one at the time it was made. It also

appears that the trustee acted with good judgment and a sound discretion and in good faith which would be all that could be required of him under the terms of an ordinary will. *Lovell* v. *Minot*, 20 Pick. 117. A savings bank investment. R. S., c. 47, § 99. Perry Trusts, § 459; *Clark* v. *Garfield*, 8 Allen, 427; *Emery* v. *Batchelder*, 78 Maine, 233. The English rule of investing in government funds is not law in this country except in New York and Pennsylvania. 1 Lewin Trusts, Am. notes (Ed. of 1888). The doctrine laid down in *Har. Coll.* v. *Amory*, 9 Pick. 446, authorizing investment of trust funds in the capital stock of a manufacturing corporation has now been followed since 1830. It must be borne in mind that the investments complained of were not the result of disposing of previous investments at the caprice of the trustee and reinvesting the proceeds, and the same principle must apply as to cases where trustees invest interest accruing, in which case they are not held to so strict an account as in the case of the investment of capital sums. Perry Trusts, § 462; *Barney* v. *Saunders*, 16 How. 545.

The present is like the case of a trustee retaining an investment made by the testator even when falling in value. *Bowker* v. *Pierce*, 130 Mass. 262. In the absence of directions in the will the trustee must exercise his best judgment in good faith. *Amory* v. *Green*, 13 Allen, 413; *N. E. Trust Co.* v. *Eaton*, 140 Mass. 532; *Kinmonth* v. *Brigham*, 5 Allen, 270; *Hunt, Appellant*, 141 Mass. 515; and *Brown* v. *French*, 125 Mass. 417; and *Lovell* v. *Minot*, 20 Pick. 119, *supra*. In *Harvard College* v. *Amory*, *supra*, the stock came from the trustees to themselves as executors of the same estate; and the court held that the party attacking the account must affirmatively prove an abuse of the trust. Objection, if any, should have been taken when the executor's account was filed, three years before the trustee account was offered. Where trustees act *bona fide*, and to the best of their discretion, they are entitled to the protection of the court. 3 Red. Wills, 560 (c. 12, § 2,) and cases *supra*; *Brown* v. *French*, 125 Mass. 417; *In re Maxwell*, 21 N. Y. Sr. Rep. 139; 3 N. Y. Sup. Ct. 422. Nothing short of a breach of trust, or want of good faith, would invalidate an

investment made by a trustee clothed with the ample powers and full discretion accorded to him by this will.

*A. F. Moulton*, for appellee.

EMERY, J. Cynthia C. Beale, in her last will after making sundry particular legacies, devised the remainder of her estate to the executor and trustee therein named, " in trust, however, for the following purposes, that is to say : said trustee shall take, hold, manage and invest all the estate which shall come to his hands and possession under this clause of my will, in such manner as he shall deem for the best interest of all concerned therein, and shall keep the same so invested till Edmund Kimball shall reach the age of thirty years," at which date the trustee was to turn the estate over to him.

In the same will she appointed the appellant to be executor and trustee under the will. Upon her death the will was duly proved, and the appellant commissioned as executor in October, 1885. His final account as executor was filed in November, 1886, and, after the usual public notice, was allowed as presented, by the Probate Court for Cumberland county. In this account the executor charged himself with the amount of the inventory, and with sundry other amounts "as per schedule A ;" and claimed credit for disbursements " as per schedule B." In schedule B, was this item of credit, viz : " amount transferred to my hands as trustee under the provisions of the will of the deceased to balance this account, as per schedule C, filed herewith." This item balanced the account leaving nothing to the debit of the executor. Schedule C, (filed with schedule B,) was a list of various notes, stocks, bonds, &c., among which was a note of the Union Packing Company of Portland, collateralled by stock of the same company, and also a note of one Nutter secured by a second mortgage of real estate in Scarborough. These two investments had not been made by the testatrix, but were made by the executor from cash of the estate in his hands.

After settling the above account, the appellant (the executor) qualified as trustee under the will, but filed no new inventory. He filed his account as trustee in November, 1889. In this

account he charged himself as trustee in schedule A, with the same amount he had claimed credit for in his executor's account as transferred to trustee.    He claimed credit as trustee in schedule B for numerous items of disbursements, &c., and also for the following item, viz: "Personal property in hands of trustee as per schedule D, filed herewith."    In this last schedule D were listed among other items, the following, viz:

1. 50 shares stock Union Packing Co. (par value $50,) $2500 00
2. Note of Union Packing Co. for dividend,          158 19
3. Nutter Note, collateralled by 10 shares stock
          Union Packing Co.                              401 63

It will be noticed that the appellant had changed the security of the Nutter note from a second mortgage on real estate to shares in the stock of the Union Packing Company, and had also changed the note of that company into its stock.

This company was organized in August, 1884, at Portland, under the general law, for the purposes of canning and packing fruits, meats, fish and vegetables and for dealing in the product. Its capital was fixed at fifty thousand dollars of which thirty dollars only was paid in.    The company did not begin business till 1885, and it then fixed the par value of its shares at fifty dollars.    Ninety-five shares only were ever issued.    Sixty shares were issued in payment for real estate and plant in Scarboro', which, at that time for that business, were worth three thousand dollars.    The remaining thirty-five shares were issued at various times at their par value for the purchase of machinery and tools for leased factories.    The whole of the capital stock issued was thus absorbed in real estate, machinery and tools, leaving nothing for a working capital.    The company owned one factory in Scarboro'; and had leased two others, one at Hallowell, and one at Winterport.    It carried on business on credit, as was usually done by such companies in the packing business.    The stock of the company was never offered, nor quoted, nor did it have any selling value in the open market.

At the times the appellant made the investment of the trust funds in the notes and stock of this company, its business was in healthy condition as regards payments and credits.    It has

paid no dividends, however, since 1888. In making these investments of the trust funds, the appellant acted in good faith after a personal examination, and in the belief that the investments were for the best interest of all concerned; but without consulting any outside parties as to the standing of the company, the value of its stock, or the propriety of such an investment for trust funds.

At the February term of the Probate Court, Mr. Moulton, the administrator of the original *cestui que trust*, then deceased, appeared and objected to the allowance of the three items above quoted from the trustee's schedule D. The Probate Court sustained the objections, and the trustee appealed to the Supreme Court of Probate. Evidence was then put in before the appellate court, of which the above narrative is an abridgement, and the cause was then reported to the law court for determination.

The appellant now contends that the original investments made by him as executor in the notes of Nutter, and in the note of the Union Packing Company, were adjudicated by the Probate Court to be proper investments, by the allowance of his final account as executor, in which account these investments were listed in schedule C; and that the *cestui que trust*, not having appealed from that adjudiction, is now bound by it.

We do not think that the Probate Court, in settling the executor's account in the form in which it was presented, had any occasion to adjudicate, or even consider the propriety of the investments made by him of the funds of the estate. The purpose of the account was simply to show the balance, if any, remaining in the hands of the executor after paying debts, expenses, &c. It is, at least, questionable whether the Probate Court had the power to allow the item in Schedule B, of "amount transferred to trustee to balance account." To do so was to adjudicate that the trustee was entitled to receive the balance. This was assuming to construe the will and to determine who was the residuary legatee, a jurisdiction not at that time conferred upon Probate Courts. *Hanscom* v. *Marston*, 82 Maine, 288. Even the statute ch. 49, Laws of 1891, passed since this matter came before the court, does not authorize such a determination until after the account is settled and the balance ascertained.

But, in his account, the executor made no claim to be allowed for any loss or depreciation in these particular assets or investments. By listing them in his schedule C, he alleged them to be of full face value. He only claimed credit for having turned them over to the trustee at their par value. By claiming such credit, he alleged that the trustee had received them at such valuation, thereby acquitting the executor. The two offices of executor and trustee, though held in this case by the same person; were legally as distinct as though held by different persons. *Plimpton* v. *Richards*, 59 Maine, 115.

Under the circumstances above stated, it is difficult to see how the question of the propriety of these investments arose, or was adjudicated in the proceedings upon the executor's account.

It is again urged, however, that these items in the executor's account cannot be reviewed in this examination of the trustee's account. It is argued that the only way to reach them is by re-opening the executor's account, the two offices of executor and trustee being distinct, and this proceeding concerning only the trustee. But, if these items were not adjudicated, or even considered in the allowance of the executor's account (and we have held above that they were not) there can be no occasion to re-open that account in order to reconsider them and disallow them.

The executor (whether regularly or otherwise) claimed and received credit for "amount transferred to trustee." He claimed and received the benefit of it as though paid in cash. The trustee was entitled to receive it in cash. The executor was liable to him for cash. If he took anything else in discharge of the executor's liability to him, he assumed it as cash. He practically invested the money of the estate in whatever he took in lieu of cash from the executor. In taking from the executor the note of Nutter and the note of the Union Packing Company, as part of the money to be transferred, he thereby in effect invested the trust funds in those notes. The trustee having taken them in discharge of the executor's liability, when he need not have done so, we must regard them as investments made by the trustee, and examinable in this, his account.

Coming to the consideration of the trustee's account, must he be charged with the amount of these investments in the note of Nutter and in the stock of the Union Packing Company (now conceded to be worthless) as having been unlawfully made at the time? It will be recalled that the testatrix put no limits to his discretion,—that he acted in good faith, after a personal examination, and in the sincere belief that the investments were for the best interest of all concerned. Having, before the event, thus acted in good faith and with honest judgment under a will without limitation upon his discretion, the appellant claims he has faithfully and fully performed his duty as trustee, and should not be held responsible, after the event, for mere errors in judgment.

The law does not hold a trustee responsible for errors in judgment when he has been careful to enlighten that judgment, but we think the law does require of a trustee, even under a will like this, more than good faith and honest judgment. We think it must be assumed that the testatrix made this part of her will with reference to the well known legal and equitable rules governing trustees, and that she intended the trustee of her appointment to be mindful of them. True, she left the investment of the trust estate to his judgment, but it was to his judgment as trustee, enlightened and guided by the approved rules applicable to the investment of trust funds, not to his uninformed, personal judgment exercised without reference to legal rules and principles. We do not think the language of the will was intended, or has the effect, to relieve the trustee from the observance of the well known principles applicable to the investment of trust funds. *King* v. *Talbot*, 40 N. Y. 87; *Kimball* v. *Reding*, 31 N. H. 352 (64 Am. Dec. 333).

He must always bear in mind that he is dealing with trust funds, which were not given him to be used in developing or furthering business enterprises, but to be guarded carefully and invested cautiously, so that principal as well as interest may be forthcoming at the appointed time. While he must be as diligent and painstaking in the management of the trust estate, as the average prudent man is in managing his own estate he may

not always place the trust funds where he, or the average prudent man, would place his own funds.  In measuring the duty of the trustee with the usual conduct of the man of average prudence in the care of his own estate, reference is to be had to the conduct of such a man in making permanent investments of his savings outside of ordinary business risks, rather than to his conduct in taking business chances.  There are often occurring good business chances in which a man may invest some of his own money without danger of being called imprudent, whatever the result.  But it will be generally conceded that a mere business chance or prospect however promising is not a proper place for trust funds.

While, of course, all investments, however carefully made, are more or less liable to depreciate and become worthless, experience has shown that certain classes of investment are peculiarly liable to such depreciation and loss.  These, of course, would be avoided by every prudent man who was investing his own money with a view to permanency and security, rather than chance of profit.  A trustee should therefore avoid them even though he sincerely believes a particular investment of that class to be safe as well as profitable.  Shares in the stock of new mining companies are conspicuous examples of this class.

In the light of experience, various kinds of investments have come to be regarded by intelligent and prudent men as unsuitable for trust funds.  The courts have simply given expression to this general sentiment.  Second mortgages are considered unsuitable, as they subject the trust estate to the possible necessity of raising funds to pay off the first mortgage.  *Gilmore* v. *Tuttle*, 32 N. J. Eq. 611.  So are bonds and stocks of new corporations where the success of the business has not become established.  *Adair* v. *Brimmer*, 74 N. Y. 539; *Tucker* v. *State*, 72 Ind. 242; *Kimball* v. *Reding*, 31 N. H. 352; *Dickinson's Appeal*, 152 Mass. 184; *Simmons* v. *Oliver*, 74 Wis. 633.  So are loans upon personal credit only.  *Clark* v. *Garfield*, 8 Allen, 427; *Barney* v. *Saunders*, 16 How. 538. The result of many decisions is summed up in Pom. Eq. Jur. § 1074 as follows:  "It is the settled rule in equity, in the

absence of express directions in the instrument creating the trust, or of statutory permission, that trustees or executors cannot invest trust property upon any mere personal security, nor upon the stocks, bonds or other securities of private business corporations."

The appellant calls our attention to several Massachusetts cases. While the law of that State seems more indulgent to trustees than is the law in other jurisdictions, we do not think it lets down much from the principles above stated. In *Harvard College* v. *Amory*, 9 Pick. 446, the trustee was expressly authorized to invest "in public funds, bank shares or other stocks." He invested part of the trust funds in the stock of the Boston Manufacturing Company, and in the stock of the Merrimack Manufacturing Company. Both of these were well established manufacturing corporations, engaged in the manufacture of cottons. Each had a large surplus, and had for a long time made large dividends. The stock of each was marketable. The testator had himself largely invested in the same stocks, and the appraisers of his estate appraised them at a premium. *Held*, that the trustee was justified. In *Lovell* v. *Minot*, 20 Pick. 116, the trustee lent trust funds on a note collateralled by stock of the Nashua Manufacturing Company at about seventy-five per cent of its par value. The corporation was well established and its stock was selling in the market above par. *Held*, that the trustee was to be excused. In *Brown* v. *French*, 125 Mass. 410, the trustee invested part of the trust funds in first mortgage bonds of the then Portland and Ogdensburg Railroad. The capital stock of the railroad fully paid up in cash was equal to the bonds issued. The bonds were in high repute, and were being purchased by men of reputed good judgment, for permanent investment. The trustee made careful inquiry and was generally advised that the bonds were safe. *Held*, that he was not liable for loss on them. In *Bowker* v. *Pierce*, 130 Mass. 262, the trustee retained the investment his testator had made in the stock of the then Eastern Railroad. The stock was appraised at par but afterwards began to gradually decline. The trustee made inquiries, and, among

other things, was informed that the treasurer and one of the directors of the railroad were advising their friends to buy. He decided upon the whole not to sell on the declining market. *Held*, that he was not liable for the subsequent loss.

On the other hand, it was held in the same jurisdiction, in *Dickinson's Appeal*, 152 Mass. 184, that a trustee was not justified in making investments of trust funds in the stock of the Union Pacific Railroad Company, although he did so in entire good faith after much inquiry and consultation. In a late case in Wisconsin, *Simmons* v. *Oliver*, 74 Wis. 633, the trustee, having full discretion, invested trust funds in the note of a manufacturing corporation, indorsed by its president and secretary. The corporation was in good financial standing, and the indorsers were reputed to be men of ample means. *Held*, that such an investment of trust funds was not authorized.

It remains to determine whether in making the investments complained of in this case, the appellant exercised the sound discretion required of him by the law as above expounded, his good faith and integrity being unquestioned. In doing this, we must be scrupulous not to measure his discretion exercised before the event, by our discretion called into action after the event. We are to measure it by the law,—we are only to determine whether the disputed investments are of those kinds generally rejected by the law as unsuitable for trust funds.

The original loan to Nutter upon a second mortgage of real estate was clearly an unsuitable investment of trust funds. Reflection, study and inquiry would at once have convinced the appellant of the inexpediency and danger of such an investment. The investments in the notes and stocks of the Union Packing Company seem also to be within those classes of investments adjudged unsuitable for trust funds. The company was comparatively a new corporation, doing a somewhat risky business solely upon credit. It had assumed obligations by leasing two factories in addition to the one it owned. The business, thus spread out, was sensitive to changes in the markets, the crops, the migrations of fish, the weather, etc., which are always variable and uncertain elements. It had accumulated no surplus.

It had no working capital. It was liable to be overwhelmed at the first unfavorable turn in affairs. This condition of things seems to have been recognized by the investing public, for the stock of the company had no selling value in the market.

The business may have promised well. The chance of making money and building up a business was probably excellent. The appellant, a man of well known energy and enterprise, after personal investigation, formed a favorable opinion of the company's prospects. But however favorable and glowing those prospects, we think that in the light of the decisions of the courts, and in the light of general experience, the appellant could and should have seen that he had no authority to invest trust funds in them.

It was suggested at the argument, that if the above views of the law prevailed, a trustee is always in peril and that no prudent person would undertake the office. The law, however, only excludes from the discretion of the trustee certain kinds of investments which experience has shown to be too uncertain for trust funds. There are many other kinds of investments of which the law does not disapprove, and in which a trustee may in an honest discretion place trust funds, without fear of personal loss. Still further to relieve and protect the trustee in the choice of investments, the law in this State has provided that he may call the *cestuis que trust* before the proper court, and have the proposed investments discussed and assented to by the parties, or authorized by the court. R. S., ch. 68, § 11; R. S., ch. 77, § 6, par. VII.

*Decree of the Probate Court affirmed with costs.*

PETERS, C. J., WALTON, VIRGIN, FOSTER and HASKELL, JJ., concurred.