# INDIANA TRUST COMPANY, GUARDIAN, v. GRIFFITH, BY NEXT FRIEND.

[No. 21,408.   Filed June 30, 1911.   Rehearing denied December 15, 1911.]

1. GUARDIAN AND WARD.—*Investment of Funds.*—*Trust Companies.*—*Statutes.*—Section 4953, subd. 6, Burns 1908, Acts 1893 p. 344, §10, providing that "the directors of any such corporation [trust company] shall have discretionary power to invest all moneys received by it * * * in trust in any such personal securities as are not hereinafter expressly prohibited" and shall be responsible for the value and genuineness thereof at the time the investment is made, except that such company shall not be responsible for any investment specifically ordered by any court, or by will, or other instrument, does not give trust companies discretionary, irresponsible power to invest a ward's money in securities, but merely gives to them the same dicretionary, responsible power that is accorded to individuals acting in the same capacity.   pp. 647, 650, 651, 652.

2. GUARDIAN AND WARD.—*Investments.*—It is not necessary, in the absence of a statutory provision to that effect, for a guardian to obtain an order of the court before investing his ward's funds; but investments without such an order are made at his risk.  p. 648.

3. GUARDIAN AND WARD.—*Investments.*—A guardian is required to use the prudence, discretion and intelligence exercised by ordinarily prudent men in regard to the permanent, but not speculative, use of their funds.  p. 649.

4. GUARDIAN AND WARD.—*Investments.—Court Orders.*—A guardian is not liable for investments of his ward's money, where such investments were ordered by the court.  p. 650.

5. STATUTES.— *Words.— Legal Meaning.— Presumptions.* — Words used in a statute are presumed to be used in their legal sense.  p. 651.

6. STATUTES.—*Construction.—Validity.*—Where possible, statutes will be so construed as to sustain their constitutional validity.  p. 652.

7. GUARDIAN AND WARD.—*Investments.—Stocks.*—A guardian investing practically the whole of his ward's estate in fluctuating stocks and bonds cannot justify himself on the ground that an ordinarily prudent person would do likewise with his own estate.  p. 653.

8. GUARDIAN AND WARD.—*Investments.—Current Reports.*—The *ex parte* approval of a guardian's current reports constitutes *prima facie* proof of their correctness; but, at any time before final settlement, they may be set aside, corrected, or modified if justice demands it.  p. 654.

From Probate Court of Marion County; *Merle N. A. Walker,* Judge.

Action by Humphrey C. Griffith, as next friend, against the Indiana Trust Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Ayres, Jones & Hollett* and *Kealing & Hugg,* for appellant.

*William Bosson,* for appellee.

Cox, J.—This action was brought by appellee, as next friend of Pleasant H. Griffith, a person of unsound mind, by petition in the court below, which has jurisdiction of such guardianship, in which petition he seeks to compel appellant, as the guardian of such ward, to take out of the estate

of the latter certain bonds and stocks, naming them, of the value of $98,297.52, which the current report of appellant filed in 1908 shows had been purchased with the funds of the trust, and which it is alleged had depreciated; and the petition prays that appellant guardian be required to account to the estate for the moneys so invested, together with interest thereon.

Appellant's demurrer to the petition was overruled, and thereupon it filed an answer in two paragraphs. The substance of appellant's answer is that it had invested the trust funds in stocks and bonds, as alleged in the petition, of certain named public-service, railroad and other private corporations in and outside the State of Indiana, and in nontaxable bonds of Indiana municipal corporations, except that item one, set out therein, of $1,300, stock of the Indiana National Bank, belonged to and was owned by said Pleasant H. Griffith before said Indiana Trust Company was appointed his guardian, and that it had received that stock from its predecessor in the trust as a part of the assets of the estate of the ward; and except that the second item of stock mentioned in the petition—being the Atlas Engine Works, six per cent preferred stock, of the par value of $9,500, had been sold by this guardian for its full value, and at and for the full price paid by it for such stock, and that the Brown-Ketcham Iron Works, six per cent preferred stock, of the par value of $3,000, being the third item of stock set out in the petition, was purchased by this guardian on April 28, 1903, under the special order and direction of the court; that it admitted that in its reports prior to 1906 appellant did not itemize the bonds in question by their names and specific value and cost, but reported them all together as "bonds, stocks," etc., of a certain aggregate sum for which it claimed credit, but that in its sixth report to the court in 1906 it did report such bonds specifically by name, character and cost, and claimed credit for the aggregate sum which then amounted, for said bonds, to $56,033.50, and that such

report was approved by the court; that since such report it has purchased additional bonds of the same character to the amount of $38,279.02, and has in its seventh report in 1908 specified them, and claimed credit for that additional sum; that the depreciation of such bonds at the market value is not more than $5,000.

It is further alleged that "the bonds were valid, genuine and regular, * * * and that it invested said moneys in said bonds for that reason, and it in good faith believed them to be safe, sound, desirable and profitable investments of the money of its said trust, * * * and that the matter of the investment of said moneys in said bonds was submitted to the board of directors of said Indiana Trust Company, guardian, aforesaid, and that said board fully and duly investigated and examined said bonds and stocks, and their values and securities, and after such investigation and examination directed and ordered said moneys invested in said bonds at and for the amounts paid for them by this guardian, and for the amounts at which they were reported to the court, and that said investments were made in good faith."

Appellee demurred to this answer for want of facts to constitute a defense to the petition. This demurrer was sustained, and appellant elected to stand upon its answer, and refused to plead further, whereupon the court decreed that appellant should take out of its account with the estate the bonds, designating them, and that it should charge itself with the amount invested by it in the purchase of them, to wit: $93,997.32, together with interest at the rate of six per cent from the date of the decree, and rendered judgment against appellant for costs. From this judgment this appeal is taken, and the errors assigned are based on the rulings of the court in overruling appellant's demurrer to the petition and in sustaining appellee's demurrers to the two paragraphs of answer.

The central and vital question is, did the provisions of the act of 1893, and the amendments thereof, authorizing the

incorporation of loan, trust and safe deposit companies (Acts 1893 p. 344, Acts 1899 p. 503, Acts 1907 p. 109, §§4942-4959 Burns 1908), grant to such companies a discretion so broad and plenary in the investment of the funds of a ward or other *cestui que trust* that, when exercised without submitting the question to the court in which supervision of the trust rests and acting on its order, they are absolved from liability for loss in the subsequent depreciation of the investment?

It is from the authority granted by said act that appellant received its appointment as guardian of the estate of Griffith at the hands of the lower court, and it is contended by its counsel that the sixth subdivision of §10 of said act (§4953, *supra*) grants it the wide and exonerative discretion in investing the estate of its ward, heretofore indicated. That part of the act from which it is insisted such discretion is derived, reads as follows: "Sixth. The directors of any such corporation shall have discretionary power to invest all moneys received by it on deposit or in trust in any such personal securities as are not hereinafter expressly prohibited; and it shall be held responsible to the owners, or *cestui que trust,* of such moneys, for the validity, regularity, quality, value and genuineness of all such investments and securities at the time the said investments are so made, and for the safe-keeping of the evidences and securities thereof; but if any special direction, agreement or trust is imposed upon, made or conferred in and by the order, judgment or decree of any court, or by the terms and conditions of any last will and testament, or other document, contract, deed, conveyance or other written instrument, as to the particular manner in which, or the particular class or kinds of security, funds or property, whether real or personal, the same shall be invested in, then the said corporation shall follow and carry out such order, judgment, decree or other appointment, contract, deed, conveyance or other written instrument, and in such case such company shall not

be held liable or responsible for any loss, damage or injury which may occur or be incurred by any person or *cestui que trust* by reason of its performance of such trust as aforesaid.''

It is contended that under the discretionary power vested in appellant under the first part of this provision, it is given a wide latitude in selecting the securities for investment, that it is required to exercise only good faith and due care in selecting the securities it may choose to buy, that liability is not continued after the time such investments are made for the value of such securities, and that to absolve it from liability it is not necessary to procure an order from the court authorizing such investment.

It is necessary for a guardian to get an order from the court before investing the funds of the ward, only when the statute so provides. When it is not so provided, the guardian is vested with a discretion. 21 Cyc. 87, 88; 17 Am. and Eng. Ency. Law (2d ed.) 432; note to *Schmidt* v. *Shaver* (1902), 89 Am. St. 250, 292; *Gary* v. *Cannon* (1843), 38 N. C. 64; *Mather* v. *Knox* (1882), 34 La. Ann. 410; *Durrett's Guardian* v. *Commonwealth* (1890), 90 Ky. 312, 14 S. W. 189; *Sherry* v. *Sansberry* (1852), 3 Ind. 320.

But while such investments may be made, yet, if made without an order from the court, the risk is with the guardian. *In re Cardwell* (1880), 55 Cal. 137; *Nagle* v. *Robins* (1900), 9 Wyo. 211, 62 Pac. 154; *Coffin* v. *Bramlitt* (1868), 42 Miss. 194, 97 Am. Dec. 449; *Clark* v. *Anderson* (1877), 76 Ky. 111; *Robertson* v. *Robertson's Trustee* (1908), 130 Ky. 293, 113 S. W. 138, 132 Am. St. 368 and note; *Sherry* v. *Sansberry, supra; Tucker* v. *State, ex rel.* (1880), 72 Ind. 242; Woerner, Guardianship p. 211; 21 Cyc. 88. See, also, *Brown* v. *Wright* (1869), 39 Ga. 96, 101; *McIntyre* v. *People, ex rel.* (1882), 103 Ill. 142; *Hughes* v. *People, ex rel.* (1881), 10 Ill. App. 148; *Carlysle* v. *Carlysle* (1857), 10 Md. 440; *Forrester* v. *State, ex rel.* (1876), 46 Md. 1540.

There is little authority to show that a trustee may excuse himself by showing that he has conducted the business of investing his trust funds in the same manner that an 3. ordinarily prudent man of business might do with his own property. The trustee must conduct himself faithfully, and exercise a sound discretion. He is to observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of the capital invested. A business man of more than average caution may, and often does, assume intentional risks in the investment of his own property. For the sake of obtaining a greater than an ordinary income, he will often invest in such a manner that the risk of ultimate loss is considerable, and such speculative use of his property would not be regarded as illegitimate, nor as deserving of any censure. No such risk is permitted to the trustee. *King* v. *Talbot* (1869), 40 N. Y. 76; *Mills* v. *Hoffman* (1882), 26 Hun 594; *Adair* v. *Brimmer* (1878), 74 N. Y. 539; *Worrell's Appeal* (1854), 23 Pa. St. 44; *Ihmsen's Appeal* (1862), 43 Pa. St. 431; *Kimball* v. *Reding* (1855), 31 N. H. 352, 64 Am. Dec. 333; *Clark* v. *Garfield* (1864), 8 Allen 427; *Brown* v. *French* (1878), 125 Mass. 410, 28 Am. Rep. 254; *Dickinson's Appeal* (1890), 152 Mass. 184, 25 N. E. 99, 9 L. R. A. 279; *Davis's Appeal* (1903), 183 Mass. 499, 67 N. E. 604; *Mattocks* v. *Moulton* (1892), 84 Me. 545, 24 Atl. 1004; *Smith* v. *Smith* (1832), 7 J. J. Marsh. (Ky.) *238; *Durrett's Guardian* v. *Commonwealth, supra;* *Learoyd* v. *Whiteley* (1887), 12 App. Cas. 727, 733; 17 Am. and Eng. Ency. Law (2d ed.) 435, 437; 13 Am. Law Reg. (N. S.) 201; 25 Am. Law Reg. (N. S.) 217, 225; note to *Nyce's Estate* (1843), 40 Am. Dec. 498, 506; note to *Schmidt* v. *Shaver* (1902), 89 Am. St. 250, 292; note to *Robertson* v. *Robertson's Trustee* (1908), 132 Am. St. 368, 372; 3 Pomeroy, Eq. Jurisp. (3d ed.) §§1071, 1074.

The use of the words "discretionary power" does not ren-

der the guardian any the less liable on failure properly to invest and manage the trust. They do not relieve appellant of the high degree of care and prudence required of guardians. The only effect they have is to leave the guardian free to select the investment, but the care required of the guardian in making the selection is in nowise diminished. Indeed the care to be exercised must be commensurate with the freedom given. *Holcomb* v. *Holcomb's Executors* (1857), 11 N. J. Eq. 281; *In re Cant* (1886), 5 Dem. Surr. 269; *Bogart* v. *Van Velsor* (1883), 4 Edw. Ch. *718; *Clark* v. *Garfield, supra; Davis's Appeal, supra; Kimball* v. *Reding, supra; Pray's Appeal* (1859), 34 Pa. St. 100; *Hart's Estate* (1902), 203 Pa. St. 480, 53 Atl. 364; *Warren* v. *Pazolt* (1909), 203 Mass. 328, 346, 89 N. E. 381; *In re Hirsch's Estate* (1906), 116 App. Div. 367, 101 N. Y. Supp. 893; 66 Cent. L. J. 244; 25 Am. Law Reg. (N. S.) 217, 225; Woerner, Guardianship p. 207 *et seq.*; 3 Pomeroy, Eq. Jurisp. (3d ed.) §1073.

The rule has prevailed in this State, that a trustee who exercised his own discretion in the matter of investing the trust fund was liable for loss incurred by depreciation, while if he made investment by order of court, after a presentation of the facts, he was absolved from liability for such loss. In the case of *Tucker* v. *State, ex rel.* (1880), 72 Ind. 242, it was held by this court that an investment of trust funds in the stock of an ordinary business enterprise by a trustee of an express trust, appointed by court, without an order of court, is an abuse of his discretionary control over the funds so invested, and involves a breach of his duty as such trustee. And the rule so declared is in entire harmony with the great weight of authority. True, this case was decided before the act in question was passed and became a law, but since there is nothing in the act showing an intention not to adopt the limitation placed on the discretionary power of a guardian by the rule as voiced in that case, it must be presumed that the legislature

in enacting the statute, and that part of it before quoted, meant to adopt such limitation, for if the legislature uses words that have received a judicial construction, they are presumed to be used in that sense, unless the contrary intent can be gathered from the statute. 2 Lewis's Sutherland, Stat. Constr. (2d ed.) §399 and cases cited under note 36; 26 Am. and Eng. Ency. Law (2d ed.) 607; *Burk* v. *State* (1867), 27 Ind. 430, 431; *State* v. *Berdetta* (1880), 73 Ind. 185, 188, 38 Am. Rep. 117; *Western Union Tel. Co.* v. *Scircle* (1885), 103 Ind. 227, 229; *Board, etc.,* v. *Bailey* (1890), 122 Ind. 46, 48; *Sopher* v. *State* (1907), 169 Ind. 177, 181, 14 L. R. A. (N. S.) 172; *Truelove* v. *Truelove* (1909), 172 Ind. 441, 444, 27 L. R. A. (N. S.) 220.

The rule as it existed at the time of this enactment must have been in the mind of the lawmaking power. Under it, guardians and other trustees possessed certain discretionary duties with regard to the control over and investment of the trust funds. An exercise of the discretion without submission to the supervisory direction of the court having jurisdiction was at the risk of the guardian or other trustee, if loss occurred, while an exercise of the discretion under the approval and direction of the court absolved from loss. As we see it, clause six of §4953, *supra,* does nothing more than declare that the same rule shall also apply to the companies brought into life by the statute and authorized to act as guardian when acting in such a trust capacity by appointment; in short, it applies the same measure of duty and responsibility to trust companies acting in a trust capacity as to a private person so acting. A contrary intent is not disclosed by the provisions of the statute. Said clause does not declare that there shall be no liability when such a company acts solely and independently on the discretion granted to it. It does expressly declare that there shall be none, if its action is taken upon the specific direction of the court.

Moreover, statutes are to be so construed as to sustain their constitutionality, rather than to place upon them a construction that would render them invalid. 26 Am. and Eng. Ency. Law (2d ed.) 640; *Brown* v. *Buzan* (1865), 24 Ind. 194; *Phenix Ins. Co.* v. *Burdett* (1887), 112 Ind. 204; *McCreery* v. *Fallis* (1904), 162 Ind. 255; *United States Express Co.* v. *State* (1905), 164 Ind. 196; *Hargis* v. *Board, etc.* (1905), 165 Ind. 194.

The construction of clause six contended for by appellant might well cast doubt on its validity. It would place natural persons acting as guardians, or in other trust capacities, in a class on which the law imposed narrower powers and a greater liability than these corporations, while acting in exactly the same fiduciary relation. Whether this can be done without a violation of constitutional limitations may well be doubted.

It must follow that the investment of the trust funds by appellant guardian, without authority of court, was, under the rule existing in this State, and generally in other states, an abuse of its discretionary control of its trust. Manifestly to give the statute the meaning contended for by appellant, would place trust funds at the mercy of guardians. The rule that there must be the directive order of court to work absolution to the guardian for loss is a wholesome one in this day of promotion, exploitation and the underwriting of the obligations of industrial enterprises.

In this State, the rule announced in the case of *Tucker* v. *State, ex rel., supra,* approaches the strictness of the English rule announced in the case of *Clough* v. *Bond* (1838), 3 Myl. & Cr. (14 Eng. Ch.) *490. Some of the states in early days broke away from the strict English rule, and adopted a less fixed standard. See *Harvard College* v. *Amory* (1830), 9 Pick. 446, which is the leading case on this point. But the reasons advanced therein for not adopting the English rule in all its strictness, requiring an investment of trust funds in real estate or government securities, no longer exist, and

the tendency is properly towards the full strictness of that rule. 3 Pomeroy, Eq. Jurisp. (3d ed.) §1074; Woerner, Guardianship pp. 211, 212; 1 Perry, Trusts (6th ed.) §456.

From the latter we quote the following: ''There are now national, state, county, town, and city bonds in sufficient amounts to absorb all trust funds seeking investment, and it is not to be denied that such investments are more permanent and safe. It may be admitted, that great public emergencies and national dangers have an unfavorable effect upon the value of public securities; but such emergencies and dangers have the same effect upon the stocks of private corporations. In addition to these depressing influences, the capital of such companies runs the risks and chances of trade, business, and speculation. Calamities that depress public credit seldom occur, while the risks of trade are constant. It would seem to be the wiser course to withdraw the funds, settled for the support of women, children, and other parties who cannot exercise an active discretion in the protection of their interests, as much as possible from the chances of business. It may be said, that settlors may always do this by directing in what manner the funds settled by them shall be invested. But it would seem to be wiser for the court to establish the safest rule in the absence of special directions, and leave it to the settlor, if he prefers, to direct a less safe investment.''

A further relaxation of the rules governing guardians cannot be sanctioned.

But if all that we have said be not true, and we grant that appellant is required to exercise only such diligence and care in discharging its duty as ordinarily prudent men exercise in reference to their own affairs, can it then be said the ordinarily prudent man invests practically his entire wealth in stocks and bonds, many of which are of fluctuating and uncertain value? To state the question is to answer it in the negative. See *Dickinson's Appeal, supra; Davis's Appeal, supra; Warren* v. *Pazolt, supra.*

The mere fact that the current reports filed by appellant

were approved by the court is no bar to appellee's action, for the approval of the various reports were *ex parte* proceedings, such as are usually made in passing accounts current of guardians and partial reports of executors and administrators. "*Ex parte* orders made by the court in the matter of a guardianship, whether by way of direction to the guardian, or of approval of action theretofore taken by him, like those made in the settlement of an estate, are regarded as *prima facie* correct, but are as a rule within the control of the court making them until final settlement of the guardianship. Such orders may, at all times, before final settlement and discharge of the guardian, be set aside, corrected or modified if the requirements of justice demand it." *State, ex rel.,* v. *Wheeler* (1891), 127 Ind. 451. See, also, *State, ex rel.,* v. *Peckham* (1894), 136 Ind. 198, 202; *Candy* v. *Hanmore* (1881), 76 Ind. 125, 128; *Daniels* v. *Bruce* (1911), *ante,* 151; 21 Cyc. 179; 15 Am. and Eng. Ency. Law (2d ed.) 47, (6); Henry, Probate Law §712.

It may be that part of the bonds in which appellant invested the funds of its trust were of a class universally approved, but no question is presented as to the scope of the judgment rendered, the sufficiency of the petition and answers thereto being alone involved.

Finding no error in the record, the judgment of the lower court is affirmed.

Myers, J., did not participate in the decision of this cause.