## Conrad's Executor v. Conrad.

(Decided December 3, 1913).

### Appeal from Grant Circuit Court.

1. Courts—Stipulations—Order—Nunc Pro Tunc Entry.—Where, in an action in equity, the parties agreed that such of the testimony as had not previously been taken by depositions might be orally heard by the court on the trial, as in an ordinary action where the right of jury is waived, and such agreement was approved by the court and oral evidence heard as therein stipulated, but, by inadvertence or mistake, the agreement was not reduced to writing or entered of record, the court's knowledge and approval of the agreement authorizes a nunc pro tunc entry of the agreement and orders in accordance therewith.

2. Stipulations—Trial—Appeal—Estoppel.—Where, in an action in equity, an agreement with respect to the taking of oral testimony had been entered into and acted upon, a party thereto is estopped from objecting in the trial court to the filing of the official stenographer's transcript of such oral testimony as stipulated in the agreement, and also from complaining in the Court of Appeals of the presence in the record of such transcript of the oral testimony.

3. Attorney and Client—Authority—Stipulations.—An attorney has general power to make such agreements or stipulations, with respect to the conduct of litigation entrusted to him, as he may deem beneficial to his client; and such agreements, whether made in or out of court, when entered into without fraud or collusion, and acted upon, bind his client.

4. Principal and Agent—Compensation of Agent—Amount.—Where a principal entrusted to his agent the control and management, in accordance with his discretion and as if it were his own, an estate consisting mainly of notes, bank stock, certificates of time deposits, and other choses in action, aggregating in value about $42,000, without any agreement as to amount of compensation or method of determining it, and the agent, for three and a half years, managed the estate with such skill and fidelity as not to lose a dollar of the estate but increased its value 16 2-3 per cent. above the amounts paid to the principal out of the income for his support, an allowance of $1,400, is held to be reasonable compensation for such services.

5. . Principal and Agent—Compensation.—Where a principal entrusts the management of his estate to his agent, with the understanding that the agent will be paid for his services, but without any agreement or stipulation as to the amount of compensation, or the method of determining it, the law allows the agent a reasonable compensation for his services, in determining which, there is no fixed rule, but the matter must be left largely to the discretion and judgment of the courts called upon to fix such compensation; in doing which, they must take into consideration the character of the property, the circumstances attending its management, and the fidelity and success of the agent himself.

6. Insane Persons—Committee—Compensation.—A committee of the estate of a person of unsound mind, under the provisions of Section 3883, Ky. Stats., cannot be legally allowed more than five per cent. on the amounts received and distributed by him, but he may, in the discretion of the court, upon proof heard in open court and upon notice to the parties in interest, be allowed additional compensation for extraordinary services rendered and expenses incurred in attending to and winding up such estate, not exceeding in amount a fair compensation for the time occupied, and expenses incurred, in protecting, attending to, collecting and settling up the estate. Where the estate amounted to about $42,000, and only small amounts of money were collected and distributed by the committee, but he was put to extraordinary trouble and expense in caring for the health and comfort of his ward, during his insanity and illness, an allowance of $700.00, included in which was an item of $250.00 paid as premium on his bond as committee, is held to be excessive and ordered to be reduced to $550.00.

TOMLIN & VEST for appellant.

O. S. HOGAN, CLORE, DICKERSON & CLAYTON and A. G. De JARNETTE for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing on original appeal and affirming on cross appeal.

In the latter part of 1910, William Conrad died testate at a sanatorium in Cincinnati, Ohio, but was, at the time of his death and for many years prior thereto, a resident of Grant County, Kentucky. His will was thereafter duly admitted to probate by the Grant County Court and J. Claude Conrad, his son, being named in the will as executor, at the same term of the court executed bond and duly qualified as such.

About one month before his death, the testator, William Conrad, was adjudged a person of unsound mind in the Grant County Court, and, by an order of that court, his brother, the appellee, R. L. Conrad, was appointed a

committee for him and to take charge of his estate, which appointment he accepted, and, after the execution of the required bond and the taking of the necessary oath, undertook the performance of the duties appertaining thereto. Shortly after the death of William Conrad, appellee, as committee, made in the Grant County Court a settlement of his accounts as such, which was in due course confirmed by an order of that court. The committee was charged with $45,493.78 and credited with $3,162.50, leaving a balance in his hands of $42,331.28, which amount he immediately paid to the appellant as executor of the testator's will.

Thereafter this action in equity was brought in the Grant Circuit Court by the executor to surcharge the settlement made by appellee in the Grant County Court. It was not alleged in the petition that appellee, as committee, had not been charged in the settlement with all that came to his hands as such committee, but that he had been allowed sundry credits to which he was not entitled; the chief complaint being as to an item of $1,750.00 allowed him as compensation for three and a half years services, which he had rendered the testator, William Conrad, as his financial agent before the latter was adjudged of unsound mind; and the further item of $700.00, commission allowed him as committee of the testator between the date of his being adjudged of unsound mind and the date of his death.

The answer of appellee traversed the averments of the petition and alleged the correctness of the several credits in the settlement complained of; and, on the hearing, the circuit court approved all the credits that had been allowed by the county court except the allowance of $1,750.00 as compensation for the services rendered by appellee as agent of the testator, which was reduced to $1,400.00, and for the difference between these amounts, $350.00, the executor was given judgment against appellee. The executor, being dissatisfied with the judgment manifesting these rulings, has appealed, and appellee, complaining of so much of the judgment as reduced the compensation allowed him for his services as agent from $1,750.00 to $1,400.00, has taken a cross appeal.

Before considering the merits of the case, it will be necessary to dispose of a motion made by appellee to dismiss the appeal. The motion is based upon the ground that, as a part of the evidence heard in the court below

was introduced orally upon the trial as in an ordinary action, it should have been made a part of the record by a bill of exceptions containing it, filed in the circuit court and formally approved and signed by the judge thereof. This would, undoubtedly, be a correct view to take of the matter, but for an agreement between the parties made before the trial. It appears from the record that down to the time the agreement in question was made, such proof as had been taken by the parties was in the form of depositions, but when the case was called for trial, neither party had concluded the taking of his evidence and as both parties were anxious for a trial, it was agreed that such of the testimony as had not previously been taken by depositions might be orally heard by the court on the trial, as in an ordinary action where the right of trial by jury is waived.

It further appears, however, that this agreement, though approved by the court, through inadvertence or mistake on the part of counsel representing appellant and appellee, was not reduced to writing or made a part of the record, notwithstanding which, when the case was reached for trial, much of the evidence was orally heard from the witnesses then introduced, without objection from either party. After the trial, however, and when the official stenographer attempted to file and make a part of the record the oral testimony received during the trial, it was discovered that the agreement referred to had not, as intended by the parties, been reduced to writing or made a part of the record; whereupon the court entered the following order: ''On the 14th day of the February term of this court, this cause came on for hearing, and the parties not having taken all their depositions it was then agreed by the parties hereto and concurred in by the court that each party might introduce such witnesses as they might desire to be heard orally and stenographic notes taken of such evidence and later transcribed and such transcription be treated as the respective depositions of the witnesses introduced; and it appearing that no order was entered of record showing these facts it is now moved by the plaintiff that an order be entered as of date February 20, 1912, reciting the above facts. To this motion the defendant objects and the court being advised overrules said objection to which ruling the defendant excepts. It is, therefore, ordered that the following order be now entered as of date February 20, 1912, viz: This cause coming on for

hearing and the parties not having taken all their depositions it is agreed by the parties and ordered by the court, that either party to this action may introduce such witnesses as they desire and such witnesses be heard orally by the court and their evidence taken in stenographic notes and later transcribed, and such transcribed notes be treated as the depositions of the respective witnesses introduced; and E. C. McMillan the official stenographer of this court is directed to take stenographic notes of the evidence offered by each party and later transcribe said notes which said transcribed notes will be treated as the depositions of the various witnessses; to all of which the defendant excepts.''

Immediately after this order, it is recited by the record that ''all the depositions for both plaintiff and defendant referred to in the foregoing order and all the oral proof offered by plaintiff and defendant and transcribed and filed by E. C. McMillan and the proceedings had at the trial are in words and figures as follows'':

Following this statement the depositions and oral evidence are copied in full.

It will thus be seen that the oral testimony heard on the trial was, in accordance with the agreement between the parties, transcribed and filed by the official stenographer of the court after the trial. It was thereby properly made a part of the record and is to be regarded as much the depositions of the several witnesses who gave it, as if their testimony had been taken in the form of depositions before the submission and trial of the case. The court's knowledge and approval of the agreement of the parties authorized the entering of the *nunc pro tunc* order with reference thereto. If appellee had withdrawn his consent to the agreement before the oral testimony was received by the court, or had objected to its being so received, a different question would be presented. But he did not withdraw from the agreement or object to the introduction of the oral testimony until after the trial and when the official stenographer filed the transcript of the oral testimony. As the agreement had been consummated, the objection came too late in that court, and, for the same reason, appellee will not be allowed to make the objection in this court that the oral testimony is not presented by a bill of exceptions apart from the depositions regularly taken in the case. This conclusion is rested upon the familiar principle of an estoppel *in pais,* which is that, when a party, by his

declaration or conduct, has induced another to act in a particular manner, which he would not otherwise have done, such party will not afterwards be permitted to set up a claim inconsistent with such declaration and conduct, if such claim will work an injury to the other party or to those claiming under him.

An attorney has general power to make such agreements or stipulations with respect to the conduct of the litigation entrusted to him as he may deem beneficial to his client, whether such agreements or stipulations are made in or out of court, and when they are entered into without fraud or collusion they will bind his client. A fortiori, is this true when the agreement or stipulation is sanctioned by the court. This principle is well stated in Thompson on Trials, sections 190, 193, in the latter of which it is said: ''Such being the extensive nature of his (the attorney's) powers in the conduct of litigation, it follows that stipulations made in open court with the opposite counsel have, in general, the force of contracts, the performance of which the court will enforce. Some decisions add, as a condition of the binding character of a stipulation, that it be also entered of record. But on principle, it would seem sufficient to give the stipulation or terms, made in *facie curiae*, the binding nature of a contract, that the other party has acted upon.''

The doctrine in question has received the approval of this court in numerous instances. Thus in Taylor County v. Bank of Campbellsville, 145 Ky., 389, it was held that when the affirmative matter of an answer was, by agreement of counsel, controverted of record, the legal effect was the same as if a reply had been filed containing a specific traverse of the averments of the answer. In Mahoning Coal Co. v. Dowling, 124 S. W., 370 (not elsewhere reported), we held that, where the parties to a suit to determine title to land agreed that for the purposes of the trial it would be conceded that plaintiff had a regular derivation of title of record from the Commonwealth, the defendant cannot claim that plaintiff's title was insufficient to sustain a judgment in his favor.

In view of the foregoing authorities, and others that might be cited, appellee is estopped to complain of the presence in the record of the stenographer's transcript of the oral testimony heard on the trial, and his motion to strike same, and also so much of the evidence as was taken in the form of depositions in the court below, from the record is overruled.

In passing upon the objection urged by appellant to the allowance of $1,400.00 made appellee by the circuit court, as compensation for services rendered by him as agent of the testator, it will be necessary to consider the extent and character of such services and the circumstances under which they were rendered. It appears from the evidence, and is admitted by appellant, that, somewhat more than three and a half years before his death, the testator left his home in Grant County, Kentucky, and went to the State of California; and, while it is conceded that it was not his purpose to become a permanent resident of the latter State, it was nevertheless true that he remained there for the succeeding three and a half years and did not return to Kentucky until he was brought back and adjudged a person of unsound mind and taken to a sanatorium at Cincinnati. The testator, at the time of leaving Kentucky for California, was possessed of an estate amounting to about $42,000.00, consisting of notes, bank stock, time certificates of deposit, and other choses in action, and, just before leaving Kentucky, he placed this property in the hands of the appellee and appointed him as his agent to hold and control same, with directions to collect such notes, time certificates of deposit, stocks and other choses in action, as might become due, and re-invest the proceeds, and clothing him with the power to manage the property left in his hands in accordance with his own discretion and, in all respects, as if it were his own. Appellee accepted the trust thus imposed and discharged it with a skill and fidelity rarely equaled. During the three and a half years, appellee collected upon the notes and other choses in action held by him as such agent, large sums of money, all of which, except such part of the income as was sent to the testator in California, he safely and profitably re-invested, in the meantime increasing the estate of his principal more than $7,000.00.

It also appears from the evidence that appellee loaned much of the money held by him as agent upon real estate mortgages, and took upon himself the duty of investigating the title to the real estate mortgaged; that he made various trips in attending to the business of his principal, kept the latter at all times fully informed of the condition of his property and of the investments that had been made of his money, at all times exercising extraordinary care in protecting his interest. Appellee is, himself, a man of considerable wealth and large business interests,

and his success as a business man made his experience and judgment valuable to his principal; and what he did in increasing the latter's estate, to say nothing of the responsibility attending the work, required much of his time and labor. It is unusual that one, placed in control of so considerable an estate, should so manage it as to permit no loss whatever to his principal. Yet, not only was this done by appellee, but, in addition, when called upon to surender the trust and deliver the estate into the hands of his principal's executor, it was found that his three and a half years' management of it had given it an increase of sixteen and two-thirds per centum in value, or one-sixth of the whole. Thus regarding his services, it is entirely within the bounds of reason to say that the $1,400.00 allowed him by the circuit court is but just compensation.

It follows from what has been said that the circuit court did not in our opinion err in reducing the compensation of appellee as agent from $1,750.00, the amount allowed him by the county court, to $1,400.00; as the evidence fairly entitles him to the latter amount, but fails to convincingly establish his right to any greater compensation.

We are aware that appellee accepted the trust without any agreement with his principal as to the amount of compensation he was to receive for the services to be performed, but it is apparent from the evidence that he expected to be paid for his services and that the testator intended to compensate him therefor. This being the understanding of the parties, in the absence of any stipulation fixing the amount of compensation or method of determining it, the law will allow appellee a reasonable compensation for the services rendered by him, in determining which, the court must necessarily give controlling effect to the circumstances attending his employment, the purpose of the employment and the character and extent of the services resulting therefrom. 31 Cyc., 1523. While section 3883, Kentucky Statutes, which provides what the compensation to executors, administrators and curators shall be, must apply in determining what compensation appellee should be allowed for such services as he performed while acting as committee for the testator, it cannot have a controlling effect in determining what he should be allowed for the services rendered by him as agent for the latter, as the services which he performed as agent were, in many respects, different

from those required of the fiduciaries mentioned in the statute, and besides, were not rendered in obedience to statutory requirement, but by contract between him and his principal, out of which arose, by implication, a promise on the part of the latter to pay him for his services; and, there being no stipulation as to the amount of such compensation, the allowance for his services should not exceed what would be reasonable compensation therefor. In other words, there is no fixed rule as to the compensation to be allowed for such services as were rendered by appellee as agent, and the matter, from the very nature of such cases, must be left largely to the discretion and judgment of the courts called upon to fix such compensation, in doing which, they must, of course, take into consideration the character of the property, the circumstances attending its management and the fidelity and success of the agent himself.

The services rendered by appellee are more akin to those required of a receiver than of a personal representative, and with respect to the compensation of receivers this court has said: ''The Court of Appeals in such case necessarily relies to a great extent upon the chancellor's judgment.'' Wilson v. Murphy's Admr., 33 Rep., 716.

As to the allowance made appellee by the circuit court for his services as committee of William Conrad, the statute, as stated, must control. Under its provisions, he could not legally have been allowed more than five per cent on all the amounts received and distributed by him as committee. It was, however, in the discretion of the court, ''upon proof heard in open court, upon notice to the parties in interest,'' to make him an allowance, in addition, for extraordinary services and expenses rendered and incurred in attending to and winding up the estate held by him as committee, but not to exceed in amount ''a fair compensation for the time occupied and expenses incurred in protecting, attending to, collecting and settling up the estate.'' Central Trust Co. v. Johnson, 25 R., 55.

As the whole of the estate of William Conrad had been received by appellee as agent and before his appointment as committee, and what he turned over to William Conrad's executor consisted mainly of notes and other choses in action, and there was little money collected by him after his appointment as committee and also little distributed by him beyond the medical bills and sanatorium expenses of the

testator during the period of his insanity and illness, for which he received credit in his settlement, it is impossible to acurately determine what, by way of commission, should be allowed him as committee; but, it is manifest from the evidence that, in addition to his care of the testator's estate, he was put to extraordinary trouble in caring for his health and comfort during his insanity and illness; that he was compelled to quit his business and make frequent trips to Cincinnati to attend him, to consult physicians, supply nurses and procure medicines and other necessaries in his behalf and for these services, of which there was ample proof, we are of opinion he is entitled to an allowance of $300.00, which sum we regard reasonable compensation. In addition, appellee was required to give as committee a bond of $80,000.00, with a bonding company as surety, which cost him $250.00; and this sum, admitted to have been embraced in the $700.00 allowed appellee by the circuit court, he is justly entitled to receive.

It is our conclusion, therefore, that the circuit court properly fixed the compensation to which appellee is entitled as agent, at $1,400.00, but that it erred in fixing his compensation as committee at $700.00; and the latter allowance is reduced from $700.00 to $550.00.

For the reasons indicated, the judgment is reversed on the original appeal and affirmed on the cross-appeal, and cause remanded with directions to enter a judgment that will conform to the opinion.