## McCreery's Admr. v. McCreery's Committee

(Decided October 21, 1919.)

## Appeal from Daviess Circuit Court.

1. Insane Persons—Settlements of Committees—Exceptions—Jurisdiction of County Court—Appeal—Jurisdiction of Circuit Court.—On final settlement of a committee of an insane person, his administrator may question not only the accuracy of the final settlement, but of preliminary settlements that had been confirmed, by filing exceptions thereto, and not only has the county court the right to pass on the exceptions, but the propriety of its action is reviewable on appeal to the circuit court.

2. Insane Persons—Committees' Compensation.—Under Sec. 3883, Kentucky Statutes, providing that the allowance to executors, administrators and curators "shall not exceed five per cent. on all amounts received and distributed except in cases of extraordinary services," a committee of a lunatic is not entitled to charge a commission of five per cent. on the amount received, but five per cent. only on the amount received and distributed.

3. Insane Persons—Liability of Committee—Statutes.—In view of Sec. 2153, Kentucky Statutes, providing that "the power and duty of the committee of an idiot, lunatic, imbecile or incompetent person shall, in all respects, be the same as those of the guardian of an infant except as to education," sec. 2035, Kentucky Statutes, providing that if, from any source, a balance is owing by a guardian at the end of any year, which ought to have been invested or loaned out for the benefit of the ward in reasonable time, but which remains in the hands of the guardian, he shall be charged with interest from the end of the year in which the balance arose, and thereafter with interest upon interest in biennial rests, applies to committees of lunatics as well as to guardians; and where a committee charges a ward a commission in excess of what it is entitled to, it is liable not only for such excess but for interest from the end of the year in which such excess arose, and thereafter for interest upon interest in biennial rests.

4. Insane Persons—Investments—Powers and Liability of Committee.—In view of sec. 2035, Kentucky Statutes, supra, a committee of an insane person is without authority to invest the funds of its ward in notes which make it impossible to compound the interest every two years as provided by the statute, unless it shows that no other reasonably safe investment could have been made at the time, and is liable for such additional interest on the amount of such notes as it could have obtained had the money paid for the notes been invested in conformity with the statute.

5. Insane Persons—Settlements of Committees—Exceptions—Accrued Interest.—An exception to the settlement of a committee of an insane person should be sustained where it appears that the committee in purchasing a note credited itself with too much ac-

crued interest, and the administrator of the insane person is entitled to recover the difference.

6.  Insane Persons—Settlements of Committees—Sale of Standing Timber—Exceptions.—Though the committee of an insane person has no right to sell the standing timber on his ward's lands without an order of court, yet where the sale took place many years ago, and the committee showed by the best evidence obtainable that the sale was made with the approval of certain relatives of the ward, that the price received was fair and adequate, and that it accounted for every dollar of the proceeds, there is no reason why it should be required to pay any sum in excess of that which it actually received, and an exception to such item in the committee's settlement should be overruled.

R. M. STUART for appellant.

W. T. ELLIS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In the year 1895 Hawes McCreery was adjudged of unsound mind in the Daviess circuit court, and placed in the Western Kentucky Lunatic Asylum. At the same time, the Central Trust Company of Owensboro was appointed and qualified as his committee, and continued as such until his death in December, 1916, when R. M. Stuart was appointed his administrator. McCreery remained in the asylum for about ten years, and was then removed to the Beechhurst Sanitarium at Louisville, where he was maintained at an expense of about $800.00 a year.

The committee made five settlements of its accounts, one on June 24, 1900, one on December 6, 1907, one on March 21, 1910, one on April 29, 1915, and its final settlement on January 13, 1917. The first four settlements were confirmed by the Daviess county court without objections or exceptions. In all the settlements the committee charged itself with interest in a lump sum. Upon the filing of the final settlement, the administrator excepted thereto on the ground, "that said report does not show an itemized statement of interest, the amount or amounts invested, or the rate of interest derived from investments," and asked for a rule against the committee to show cause why it should not file a complete itemized settlement, covering the entire period of its service, showing biennial interest rests and separating the settlements into periods of two years each. The exceptions were overruled and the final settlement approved. The administrator prosecuted an appeal to the circuit court.

After motions to quash the summons and to dismiss the appeal had been overruled, the circuit court ordered the committee to file an amended report showing in detail the items of interest charged in the various settlements, the period of rests, what sums had been loaned by it and to whom, and whether or not any part of said sums had been mingled with its own funds.   The committee complied with this order by filing a supplemental report, showing in detail the manner in which it administered the trust, what commissions it had received, to whom it had loaned the funds, the rate of interest at which the loans were made, the time each loan ran, and further showing that it had not mingled the trust funds with funds of its own. Thereupon, the administrator filed numerous exceptions, questioning particularly the accuracy of the four settlements made prior to the final settlement.   After hearing evidence on the question, the circuit court overruled the exceptions and dismissed the appeal.   To review the propriety of the circuit court's ruling, this appeal is prosecuted.

It is first insisted that neither the county court nor the circuit court had jurisdiction to consider the exceptions, because the remedy of the administrator was by an action to surcharge the settlements, and not by filing exceptions thereto, and that the circuit court therefore erred in not dismissing the appeal.   The cases of Bell v. Henshaw, 91 Ky. 430, and Turley v. Barnes, 103 Ky. 127, do not support this contention.   They merely declare that where the settlements in the county court are excepted to or contested, the remedy of the complaining party is by appeal, but where no exceptions are filed his remedy is by an action to surcharge.   Here we have a case where the committee filed four preliminary settlements, and then a final settlement.   Upon the filing of the final settlement, the administrator questioned the correctness not only of the final settlement, but of the preliminary settlements.   The preliminary settlements were *ex parte* in effect and were only *prima facie* correct.   We therefore perceive no reason why, upon the filing of the final settlement, the accuracy of which necessarily depended upon the prior settlements, the adminstrator could not question not only the accuracy of the final settlement, but of the preliminary settlements, by filing exceptions thereto.   That being true, not only did the county court have the right to pass on the exceptions,

but the propriety of its action was reviewable on appeal to the circuit court.

Coming to the merits of the case, we find that the committee in its settlements of 1900, 1907 and 1910, credited itself by commissions of five per cent. on the amount of money received, instead of the amount of money disbursed.    Except in cases of extraordinary services, the statute provides that the allowance to executors, administrators and curators, "shall not exceed five per cent. on all the amounts received and distributed," and the statute applies to committees.    Section 3883, Kentucky Statutes; Conrad's Exr. v. Conrad, 156 Ky. 231, 160 S. W. 937.   Here no claim for extraordinary services was asserted.    Hence, the committee was not entitled to charge a commission of five per cent. on the amount received, but five per cent. only on the amount received and distributed.    It therefore follows that exceptions 1, 2 and 4 should have been sustained.

Section 2035, Kentucky Statutes, is as follows:

"If, from any source, a balance is owing by a guardian at the end of any year, counting from the time of his appointment, which ought to have been invested or loaned out for the benefit of the ward in reasonable time, but which remains in the hands of the guardian, he shall be charged with interest from the end of the year in which the balance arose, and thereafter he shall be charged with interest upon interest, in biennial rests, and the guardian shall account to his ward for whatever profit or rate of interest he receives from loans or investments of the trust funds."

This statute applies to the committee of a lunatic as well as to the guardian of an infant, for section 2153, Kentucky Statutes, provides that "the power and duty of the committee of an idiot, lunatic, imbecile or incompetent person shall, in all respects, be the same as those of the guardian of an infant except as to education." The statute is first invoked with respect to the excess of commissions charged by the committee.   Manifestly, each amount which it retained in excess of what it should have charged was a balance owing by the committee, and remaining in its hands at the end of the year, which should have been invested or loaned out for the benefit of the lunatic, and therefore the committee is liable not only for the amount of each excess, but for interest from the end of the year in which such excess arose, and thereafter for interest upon interest in biennial rests.

The statute is further invoked with respect to the purchase by the committee of certain lien notes, maturing in two, three, four, five and six years with straight interest payable at maturity. In our opinion, the committee was without authority to invest in notes which made it impossible to compound the interest every two years, unless it showed that no other reasonably safe investment could have been made at the time, and there is no such showing in this case. We therefore conclude that the committee should be charged with such additional interest on the amount of such notes as it could have obtained had the money paid for the notes in question been invested in conformity with the statute.

It further appears that the committee credited itself with accrued interest in the sum of $120.00, paid on the W. E. Hubbard note for $2,000.00. Apparently, the amount of this credit is larger than it should be, and upon a return of the case it should be made to conform to the amount of accrued interest actually due, and the administrator is entitled to recover the difference. It therefore follows that exception No. 5 should have been sustained.

Exception No. 3 questions the item of $1,500.00 which the committee received from the sale of timber from the lands of its ward. While it is true that the committee had no right to sell standing timber without an order of court, yet as the sale took place many years ago, and the committee showed by the best evidence obtainable that the sale was made with the approval of certain relatives of the ward, that the price received was fair and adequate, and that it accounted for every dollar of the proceeds, we perceive no reason why it should be required to pay any sum in excess of that which it actually received. Exception No. 3 was therefore properly overruled.

Judgment reversed and cause remanded for proceedings consistent with this opinion.