# Inter-Southern Life Insurance Company v. Hughes' Committee.

(Decided May 8, 1928.)

## Appeal from McCracken Circuit Court.

1. Insurance.—In action on insurance policy to recover total disability payments and premiums paid during disability and to recover policy which had been surrendered to insurer under a settlement with insured, in which insurance company's defense was that settlement had been entered into on account of alleged false representations in application, evidence held to sustain finding of trial court that insured was of unsound mind at time settlement was entered into and policy surrendered.

2. Insane Person.—Settlement entered into between insured, at time of mental incompetency, and his committee without leave of court, by which policy was returned on account of alleged false representation held void, where settlement involved surrender of valuable rights without adequate consideration in case policy was valid, and where insurance company knew of insured's condition, or, at least, that he had a committee, under Ky. Stats., secs. 2030, 2153.

3. Insurance.—Alleged false representations of insured in application held not available as defense to insurance company, in suit by insured's committee to recover disability payments on the theory that purported settlement was void, under Ky. Stats., secs. 2030, 2153, where application was printed in smaller type than brevier, under section 679, making such application inadmissible in evidence, since the proceeding was not one for the reinstatement of a lapsed policy, in which application would be admissible.

4. Insurance.—Where insured became totally disabled both mentally and physically and blind, insured's committee in his behalf was entitled to recover disability payments and to be relieved from payment of premiums under policy, which required insurance company to pay premiums during continuance of total disability and to pay disability benefits.

WHEELER & HUGHES and JULIEN ERWIN for appellant.

W. A. BERRY and A. S. GARDNER for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming in part and reversing in part.

The appellee shows in his petition seeking relief in this action in the lower court that the appellant, prior to September 30, 1922, issued to E. C. Hughes a life insurance policy for the sum of $5,000, payable to his estate in case of the death of the assured; that the policy con-

tained a disability clause in which appellant agreed to pay Hughes, in case of total disability, the sum of $50 per month from the beginning of such disability to the end of his life; that the policy contained a provision to the effect that, in the event of total disability, Hughes would not be required to pay any further premiums on the policy after the beginning of such disability, and that the policy would be carried by the appellant in full force and effect without the payment of premiums during such disability. The appellee further shows in his petition that Hughes became totally disabled, both mentally and physically, after the issuance of the policy while same was in full force; that on December 29, 1922, he was adjudged of unsound mind and a committee had been appointed for him whose name was A. S. Lindsey, who soon thereafter resigned, when Daisy Drennon was appointed and qualified as committee; that on February 23, 1923, Daisy Drennon and E. C. Hughes intermarried, thereby becoming husband and wife; that in September 1923, another inquest was held and Hughes was adjudged of sound mind and capable of attending to his business.

Appellee further shows in his petition that after Daisy Drennon qualified as committee, and before he was adjudged of sound mind, the appellant by some fraudulent means, as is alleged, procured the possession of the insurance policy, and that it held the policy wrongfully after having unlawfully, wrongfully and fraudulently obtained possession of it. He shows, by his petition, that appellant retains possession of the policy and refuses to deliver it to appellee. He shows by his petition that appellant owed appellee $50 per month from the time the disability occurred and as long as the disability shall continue, and that by reason of such total disability and the provisions of the policy he is entitled to recover $50 a month since December, 1922, or a total sum of $850, and that he is further entitled to recover the sum of $50 per month during the continuance of such disability; that he had paid certain premiums on the policy after the beginning of such disability, which premiums were wrongfully received by the company; and that he should recover the amount of premiums so paid. His prayer is that appellant be required to deliver possession of the policy to appellee, and that it be adjudged that E. C. Hughes is the sole owner of the policy; and further, that he have judgment for $892.05 for accrued benefits and

for $50 per month during the continuance of the disability.

The appellee, after filing his petition, entered a motion asking the court to require appellant to file the policy of insurance. The appellant filed an answer in which it denied the allegations of the petition to the effect that it fraudulently obtained possession of the policy, and that it was wrongfully and fraudulently refusing to deliver the possession thereof to the appellee. It also denies that the policy is in full force or effect, or that it belonged to the appellee, or that appellee had any interest in it. There was no deniail of the allegations in the petition relating to the payment of benefits in case of total disability. In a separate paragraph of the answer it is alleged that in the application made by Hughes for the policy he untruthfully answered certain questions in the application, and that his false answers were material to the risk, and that the policy would not have been issued but for the making of the false answers by Hughes. It is alleged that he answered that he was in good health, when he was not; that he answered that he had never had appendicitis, when he had; that he answered that he had not consulted any physician or specialist for any ailment or disease, when he had consulted a physician or specialist; that he answered that no physician had ever given an unfavorable opinion on his health, when a physician had given such an opinion; that he answered that none of his uncles or aunts had suffered from insanity, when uncles and aunts had been so afflicted. It is alleged that after appellant discovered the untruthful answers, which discovery was made at the time Hughes made claim for benefits under the policy, it declined to pay the benefits and entered into a compromise agreement with Hughes and his committee whereby it paid to him the sum of $700 in satisfaction of any claim that he might then have, or ever have, under the policy, and that in consideration of such settlement and payment Hughes and his committee surrendered the policy for cancellation, and for these reasons it was no longer in effect.

The appellee replied to the affirmative allegations in the answer, and his reply is a denial of the allegations that he made false answers to any questions in the application, or that the alleged false answers were material to the risk. He also denies that he consented to the settlement or that he accepted $700 in full settlement of any claim that he might then have, or thereafter have, under

the terms of the policy, and in avoidance of the alleged settlement he pleads his mental incapacity at the time of the alleged settlement. Further, he pleads that the application made for the policy was executed and delivered to appellant before the issuance of the policy, and that the application is not attached thereto, and for that reason appellant cannot rely upon any statements in the application to defeat the provisions of the policy.

Appellant filed an amended answer alleging that a photographic copy of the application for the policy is attached to and made a part of the policy and was so attached when the policy was delivered to and accepted by Hughes. Appellee filed a reply to the amended answer denying that a copy of the application was attached to the policy, and alleging that the application was not made in print of type of not less size than brevier. Another amended reply was filed by appellee in which it is alleged that it is provided in the policy that it shall be incontestable after the expiration of twelve months and the payment of two premiums from the date of the issuance of the policy contract, and that the only ground for cancellation after such time is the nonpayment of premiums; that the policy was issued February 1, 1922, and at the time of the alleged settlement more than a year had expired and more than two premiums had been paid on the policy.

Proof was taken on the issues made by the pleadings and the chancellor awarded judgment in favor of appellee for the restoration of the policy and directed that the possession of the policy be delivered to appellee. The judgment recites that the policy is in the possession of the circuit court clerk, and the clerk is ordered to deliver it to appellee. The chancellor held that the settlement made by appellant with Hughes and his then committee on June 13. 1923, is void and of no effect, and the receipt executed by them on the policy was canceled and held for naught. It was further held by the chancellor that at the time of the alleged settlement Hughes was of unsound mind and not capable of entering into it or transacting any business of any character, and that his committee. Daisy Hughes, had no authority or power as committee to make the settlement. The chancellor further held that by reason of the fact that Hughes became afflicted with complete mental disability on October 27, 1922, he was entitled to receive benefits under the policy to the extent that appellant should not collect premiums from him on

the policy during the continuance of such disability, and that the policy should be continued in force without the payment of premiums. The chancellor adjudged that appellee was not entitled to receive the disability benefit of $50 a month under the provisions of the policy.

The insurance company has appealed from that part of the judgment adjudging that the settlement was illegal and void and that the possession of the policy in full force and effect should be delivered to appellee, and from that part of the judgment adjudging that it should carry the policy in full force and effect without the further payment of premiums during the continuance of the disability of Hughes. Appellee has obtained a cross-appeal from that part of the judgment holding that Hughes is not entitled to recover the disability benefit of $50 per month during the continuance of his disability.

The first question is one of fact; that is, whether E. C. Hughes was of sound mind when he entered into the agreement to accept $700 and to surrender any claim that he had under the provisions of the policy. It is shown by the testimony that Hughes was adjudged of unsound mind in a legal proceeding on December 29, 1922, and at that time a committee was appointed to manage his affairs. There was another inquest in September, 1923, when a jury adjudged him of sound mind. The alleged settlement was made between these two dates, that is, on June 13, 1923. He had spent some time in the Western State Hospital for the Insane at Hopkinsville, but he had been allowed to leave that institution before the date of the alleged settlement. Dr. H. P. Sights, a physician of long experience in mental disorders, testified from his personal knowledge of the case and its history that Hughes was of unsound mind when the settlement was made. The evidence on this point is conflicting. The testimony of Judge Middleton, a reputable attorney who represented Hughes and his wife at the time of the settlement, testified that Hughes was capable of fully understanding the nature of the transaction at the time of the settlement. There was other testimony to the same effect. Taking the evidence as a whole, we cannot say that the judgment of the chancellor on this point is clearly against the weight of the evidence. He heard the witnesses, knew the parties and the witnesses, and was in better position to weigh the evidence than this court. We will not therefore disturb his judgment in so far as he

found that Hughes was of unsound mind at the time the policy was surrendered and the $700 paid.

It is insisted that Mrs. Hughes, who at the time was acting as committee for her husband, had authority to make the agreement and accept the money. The chancellor found that she had no such right. The powers of a committee of a person of unsound mind are defined by section 2153, Ky. Stats. These powers are defined as being the same as conferred upon the guardian of an infant except as to education. It was held in the case of McCreery's Adm'r v. McCreery's Committee, 185 Ky. 445, 215 S. W. 78, that the committee of an insane person had no right to sell standing timber without an order of court. By the provisions of section 2030, Ky. Stats., a guardian is authorized to compromise any controversy concerning the lands of his ward by first obtaining leave of court to do so; and he "may compound a debt or demand" with leave of the court. In some instances a guardian may change the nature of the ward's estate where it will be for the best interest of the ward without first obtaining the direction of the court so to do. Durrett's Guardian v. Commonwealth, 90 Ky. 312, 14 S. W. 189, 12 Ky. Law Rep. 207; Fidelity Trust Co. v. Glover, 90 Ky. 355, 14 S. W. 343, 12 Ky. Law Rep. 329.

It is alleged in the answer that the settlement was brought about because the appellant relied upon the alleged false answers in the application for the policy. If the claim of appellant was that the answers in the application were false and the policy therefore void, it was under no duty to pay Hughes anything if it reasonably made its objection and took the necessary steps within the time allowed to cancel the policy. Instead of doing that, it took up with Hughes himself the question of making a settlement and finally effected a settlement, so it claimed, with Hughes and his wife, who at that time was acting as his committee. If the policy was valid, the settlement was an unreasonable one and the committee surrendered a valuable right without seeking the advice of any court as to her duty. It was not a question of unliquidated damages, but was solely a question as to whether it was a valid contract, and, if so, the rights of the parties under the contract. Mrs. Hughes is now dead, and we do not know her version of what took place. E. C. Hughes is insane and not capable of bringing to the attention of the court the facts relating to the settlement

as he understood them. If the policy contract is binding, valuable rights were surrendered without adequate consideration. It rather eagerly made the settlement without seeking the advice or guidance of a court, knowing at the time that Hughes was of unsound mind, or at least that he had a committee, and there was no reason for a committee, which appellant must have known, if he was capable of attending to his own affairs. Under the evidence in this case and the inferences to be drawn therefrom, we have reached the conclusion that the chancellor did not err in holding the settlement invalid whether it was made with Hughes or his wife, who at the time was acting as his committee. The committee could not make the settlement without leave of court. Manion v. Ohio Valley Ry. Co., 99 Ky. 504, 36 S. W. 530, 18 Ky. Law Rep 352.

It is urged by appellant that the settlement should be upheld because the policy contract was invalid on account of the alleged false answers contained in the application. This is not a suit to cancel the policy, and the alleged false statements are relied on, as we view the record, to uphold the settlement. There is no prayer for a cancellation of the contract or for the return of the money which was paid in the event the contract should be upheld. Appellant bases its defenses on the alleged settlement, and if the settlement is held invalid there is no defense relied on to defeat the recovery sought by appellee.

Waiving the question of whether the appellant may rely on the false statements in the application as a defense to the action in the event the settlement should be adjudged a nullity, we have another question relied on by appellee which appears to be a complete answer to the defense based on the false statements if it should be treated as allowable under the present state of the record. It is alleged in the pleadings of appellee that the application is not attached to the policy, or if it is attached to the policy that it is printed in type smaller than brevier. The appellant does not argue that, under the provisions of section 679, Ky. Stats., the type should be no smaller than brevier type, but it contends in its brief that the provisions of that section have no application to this case because that section does not apply to evidence used in an effort to have a policy or certificate reinstated. It is said by appellant that this is a proceeding to have a policy reinstated, but in that it is mistaken. The

provision in section 679 applies only to the reinstatement of lapsed policies. This is not a proceeding to reinstate a lapsed policy, or to reinstate a policy at all. The whole contention of appellee is that the policy has at all times been in force, and that the settlement or receipt executed showing that the policy had been surrendered is invalid. It was adjudged by the chancellor that the receipt showing settlement as well as the settlement was invalid, and if that is true there is no necessity for a reinstatement of the policy as it has been in effect since it was issued. It is true that, in construing section 656 Ky. Stats., the court held in the case of Fidelity Mut. Ins. Co. v. Preuser, 195 Ky. 271, 242 S. W. 608, that it was only necessary to comply with that section that the language should be clear and easily read. That section, however, contains no provision that the type shall be no smaller than brevier or eight point type. The evidence in this case shows that the type used in printing the application was smaller than brevier, and this is not contradicted. The General Assembly had the power to determine when an application for an insurance policy might be considered as evidence in a case. It has provided that it must not only be attached to the policy, but a fair interpretation of section 679, Ky. Stats., means that it must be printed in type no smaller than brevier. It is argued that the language of the application is plainly expressed and that it is capable of being read and deciphered without difficulty. We do not know about that as the policy is not before this court and the record fails to show that it was offered in evidence. We have reached the conclusion, therefore, that the appellant cannot rely in this action on the alleged false statements in the application.

It is alleged in the pleadings by appellee that there was a provision in the policy that it should be incontestable except for the nonpayment of premiums after the expiration of one year from its date and after the payment of two premiums. We do not know whether there is such a provision in the policy. Therefore we will not attempt to determine what the effect of such a provision would have been if it had been shown that it was a part of the policy contract.

The judgment of the court restoring to appellee the possession of the policy and adjudging that it was at the time in full force and effect should be affirmed.

It is alleged in the petition, and undenied, that after the issuance of the policy, and while it was in full force

and effect, E. C. Hughes became totally disabled both mentally and physically, and that he became blind. These allegations are not denied. It is further alleged that, by the terms and conditions of the policy, the appellant was under the duty to keep the premiums on the policy paid during the continuance of the total disability. The court adjudged that the company should have paid the premiums on the policy during the disability of Hughes, and that it should continue to pay them as long as his total disability shall continue. The undenied allegations of the petition support the judgment of the chancellor on this point, and to that extent his judgment must be affirmed.

By cross-appeal appellee seeks a reversal of that part of the judgment which denied him benefits at the rate of $50 per month during the continuance of the total disability of Hughes. It is alleged in the petition that there is a provision in the policy that appellant will pay Hughes $50 per month from the time his total disability commenced to the end of his life, or as long as such disability shall continue. This allegation is not denied. The chancellor appears to have denied a recovery on this point because in his opinion, under the provisions of the policy, Hughes was not entitled to recover $50 per month during his disability. We do not know whether the chancellor's conclusions on this point would have been correct if he had evidence to support them, but there was no evidence to support them as the policy was not in evidence. As the allegation stands undenied, the chancellor should have awarded judgment in favor of appellee on this point. The judgment therefore must be reversed on the cross-appeal.

If the parties should see proper to amend their pleadings they ought to be given the right to do so, so that the entire controversy may be determined at one time. The policy was not filed as an exhibit with the petition for the very good reason that appellee did not have it in his possession. The appellant, in its answer, suggested that it would file the policy if necessary. Appellee entered a motion to require it to file the policy, but so far as the record discloses the policy was not filed as an exhibit with any pleading, and neither was it offered in evidence. Doubtless it was treated by all parties as in evidence, and the chancellor appears to have had it before him when he directed the entry of the judgment.

But none of these things help us any as it is not before us.

Judgment affirmed on the original and reversed on the cross appeal, and remanded for proceedings consistent with this opinion.